**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 45 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 2016 MDA 2012 dated |
| | : | October 29, 2014, reconsideration |
| v. | : | denied January 8, 2015, which |
| | : | Affirmed/Vacated/Remanded the order |
| | : | from the Bradford County Court of |
| SCOTT BRADLEY KINGSTON, | : | Common Pleas, Criminal Division, at |
| | : | No. CP-08-CR-0000735-2009 dated |
| Appellee | : | October 22, 2012. |
| | : | |
| | : | SUBMITTED:  August 31, 2015 |

**OPINION**

JUSTICE WECHT                                     DECIDED:  August 15, 2016

Section 906 of the Crimes Code provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."  18 Pa.C.S. § 906.  The question in this case, raised under a derivative theory of ineffective assistance of counsel, is whether that provision proscribes only convictions for two or more distinct inchoate crimes, or whether it also prohibits convictions for two or more counts of the same inchoate crime.  We hold that Section 906 bars convictions only for multiple distinct inchoate crimes.  Because the Superior Court concluded otherwise in remanding for an ineffectiveness hearing, we reverse.

On November 8, 2008, Scott Kingston was driving home from a party with his then-girlfriend, Jennifer Mroz, who was sitting in the passenger seat. Kingston drove his vehicle off the road and into a ditch. When police officers arrived, Mroz told them that Kingston, who was visibly intoxicated, had been driving the vehicle. The police arrested Kingston and charged him with driving under the influence of alcohol or a controlled substance ("DUI"), 75 Pa.C.S. § 3802, and several other Motor Vehicle Code violations. A blood test revealed that Kingston's blood alcohol concentration was 0.26% shortly after the accident. Kingston had three prior DUI convictions. If convicted of a fourth, he faced a mandatory minimum sentence of one-year incarceration. See 75 Pa.C.S. § 3804(b)(4).

Prior to his trial, Kingston sent Mroz three letters from the Wyoming County Jail, where he was being held on charges unrelated to this appeal. In his first letter, Kingston asked Mroz to speak to Kingston's parents, and to find out whether they were willing to testify that Kingston's father was driving the vehicle on the night of the accident. A few weeks later, Kingston sent Mroz a second letter, asking her to tell "them" that she was driving on the night of the accident. Kingston assured Mroz that if she took the blame for the collision "they" could only "give [her] a fine." Notes of Testimony ("N.T."), 3/24/2010, exh. 2. Twelve days after that, Kingston sent Mroz a third letter, advising her as follows:

> I found out if you plead the 5[th] and say that you were toxicated you whont get nothing out of it and it should be dropped we got to do something time is running out and I got to get a lawyer be for Jan. 14-09 at 1:00 did you get that statment that I sent you honey find out and see if you should do that but dont say that I was driving the car if thay asck hoo was just say you was baby because thay cant get you for a DUI because thay did not take nothing.

Id. at exh. 3 (verbatim).

In March 2009, Mroz testified for the Commonwealth at Kingston's preliminary hearing. Contrary to Kingston's wishes, Mroz testified that Kingston was driving at the time of the accident. The charges were held for court, and Kingston proceeded to trial. However, due to an administrative oversight, Mroz did not receive notice that the Commonwealth had subpoenaed her to testify at Kingston's trial until after it had commenced. When she failed to appear on the morning of Kingston's trial, the court issued a bench warrant for Mroz and proceeded without her. The jury ultimately acquitted Kingston after Kingston's father falsely testified that he was driving the vehicle on the night in question.

The day after Kingston's trial, Mroz met with a detective from the Bradford County District Attorney's Office and explained the subpoena mix-up. Mroz also told the detective about the letters that Kingston had sent to her from jail. The Commonwealth subsequently charged Kingston with, *inter alia*, three counts of soliciting perjury and three counts of soliciting to hinder apprehension or prosecution. 18 Pa.C.S. §§ 4902, 5105. A jury convicted Kingston of all six counts, and the trial court imposed a consecutive sentence for each. On direct appeal, the Superior Court affirmed Kingston's judgment of sentence. Commonwealth v. Kingston, 1031 MDA 2010 (Pa. Super. May 26, 2011) (unpublished memorandum).

On May 2, 2012, Kingston timely filed a petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. Therein, Kingston alleged that his trial counsel was ineffective for failing to object to the imposition of consecutive sentences for each of his solicitation convictions. Kingston argued that, pursuant to Section 906 of the Crimes Code, his six convictions should have merged into only two for sentencing purposes, one for soliciting perjury and one for soliciting to hinder apprehension or prosecution. The PCRA court dismissed Kingston's petition without a

hearing, concluding that Kingston's ineffectiveness claim lacked arguable merit because Section 906 "does not prohibit multiple convictions for the same type of inchoate crime." PCRA Court Order, 8/23/2012, at 2. Kingston appealed the PCRA court's dismissal of his petition to the Superior Court.

A divided three-judge panel of the Superior Court held that Kingston's ineffectiveness claim had arguable merit, and remanded the case to the PCRA court for a hearing on the remaining prongs of the Pierce test. See Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (setting forth Pennsylvania's three-factor inquiry for ineffective assistance of counsel claims). The Superior Court acknowledged that no existing precedent supported Kingston's reading of the statute, but concluded nonetheless that Section 906 bars his multiple convictions for distinct solicitations designed to culminate in a single underlying crime. Although the majority avowedly relied upon the plain language of the statute, it focused mainly upon the policy underlying Section 906's treatment of multiple inchoate convictions. Specifically, the court explained that the statute is based upon "a recognition that the [societal] harm in inchoate crimes resides 'not in the acts already accomplished, but in the danger that [an] appellant would succeed in his criminal endeavor.'" Commonwealth v. Kingston, 2014 WL 10558605, at *4 (Pa. Super. Oct. 29, 2014) (unpublished memorandum) (quoting Commonwealth v. Crocker, 389 A.2d 601, 604 (Pa. Super. 1978)).

The court also concluded that Kingston's six separate solicitations were designed to culminate in the commission of only two crimes. The court reasoned that, although Kingston's letters to Mroz requested different methods of perjury or hindering prosecution, "they were all methods to the same end—namely, exculpation of Kingston o[n] the DUI charges." Id. The court emphasized that Kingston's three contrived narratives were mutually exclusive. If she wanted to exculpate Kingston, Mroz had to

select one of these stories and stick with it. The court likened the situation to "a defendant soliciting another person to break into a house later that evening by going through the front door, the back door, or through a window." Id.

The Honorable Mary Jane Bowes dissented. In her view, Section 906 "does not preclude a sentence on multiple solicitation counts where the defendant, on separate dates, solicited a person to commit the same crime." Id. at *7 (Bowes, J., dissenting). Judge Bowes stressed that "Section 906 has consistently been applied to preclude multiple sentences for criminal attempt to commit crime X, criminal conspiracy to commit crime X, and criminal solicitation to commit crime X, not to prohibit sentencing on multiple acts of criminal solicitation." Id. According to Judge Bowes, the Superior Court majority essentially had redrafted the statute to read, "a person may not be convicted of more than one criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." Id.

Judge Bowes also rejected the majority's conclusion that Kingston intended for all six of his solicitations to culminate in only two crimes. She noted that Kingston thrice solicited Mroz, sending three separate letters spread across several weeks. For this reason, Judge Bowes rejected as inapposite the majority's analogy to a situation in which a defendant solicits another person "to break into a house later that evening by going through the front door, the back door, or through a window." Finally, Judge Bowes observed that the court's interpretation of Section 906 would yield absurd results, namely, that "a person who solicits a person on two occasions, a year apart, to murder his or her spouse could only be sentenced on one count of solicitation because the spouse could only be murdered one time." Id. at 5-6.

We granted the Commonwealth's petition for allowance of appeal to resolve the novel question of statutory interpretation underlying Kingston's ineffective assistance of counsel claim.[1]  Our standard of review is *de novo*, and our scope of review is plenary.  Snead v. Soc. for the Prevention of Cruelty to Animals of Penna., 985 A.2d 909, 912 (Pa. 2009) (citing In re Milton Hershey Sch., 911 A.2d 1258, 1261 (Pa. 2006)).  Specifically, we consider whether Section 906 forbids multiple convictions for two or more violations of a single inchoate offense when all of the violations are designed to culminate in a single underlying crime.  18 Pa.C.S. § 906.[2]

In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et seq.*, which directs us to ascertain and effectuate the intent of the General Assembly.  1 Pa.C.S. § 1921(a).  To accomplish that goal, we interpret statutory language not in isolation, but with reference to the context in which it appears.  See Consulting Eng'rs Council of Penna. v. State Architects Licensure Bd., 560 A.2d 1375, 1377 (Pa. 1989).  A statute's plain language generally provides the best indication of legislative intent.  See, e.g., McGrory v. Dep't of Transp., 915 A.2d 1155, 1158 (Pa. 2007); Commonwealth v. Gilmour Mfg. Co., 822 A.2d 676, 679 (Pa. 2003); Penna. Fin. Responsibility Assigned Claims Plan v. English, 664 A.2d 84, 87 (Pa. 1995) ("Where the words of a statute are clear and free from ambiguity the

---

[1]    In order to obtain relief based upon an ineffective assistance of counsel claim, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.  Pierce, 527 A.2d at 975.

[2]    The Commonwealth also argues now that Kingston's solicitations were not designed to culminate in the commission of the same crime.  Brief for the Commonwealth at 13.  Because the Commonwealth did not appeal this issue, we will not consider it.

legislative intent is to be gleaned from those very words."). Only where the words of a statute are ambiguous will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c); see In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, 843 A.2d 1223, 1230 (Pa. 2004) (citing O'Rourke v. Commonwealth, 778 A.2d 1194, 1201 (Pa. 2001)).

The Commonwealth argues that Section 906 merely prevents trial courts from imposing a sentence[3] for more than one of the three preparatory offenses listed in the statute whenever a defendant's conduct is designed to culminate in the commission of a single crime. The provision does not, according to the Commonwealth, bar multiple sentences when a defendant is convicted of multiple counts of a single inchoate offense. In support of its position, the Commonwealth provides only a few conclusory assertions regarding the General Assembly's intent. Without any accompanying citations or supporting analysis, the Commonwealth contends that (1) the legislature intended for "separate inchoate crimes to be punished" individually; (2) the Superior Court's interpretation of Section 906 was "unreasonable and contrary to the intent of the legislature"; and (3) "[n]o lawmakers wanted to enact a 'volume discount' on criminal conduct." Brief for the Commonwealth at 16.

Kingston's arguments are similarly perfunctory. Echoing his Superior Court brief, Kingston argues that the trial court's imposition of six consecutive sentences was

---

[3] Although Section 906 bars "multiple convictions," the Superior Court has held, and we have assumed without explicitly deciding, that the statute proscribes multiple judgments of sentence. Commonwealth v. Jacobs, 39 A.3d 977, 983 (Pa. 2012); Commonwealth v. Grekis, 601 A.2d 1284, 1295 (Pa. Super. 1992) ("[Section 906] is designed to eliminate multiple convictions, *i.e.*, judgments of sentence, for conduct which constitutes preparation for a single criminal objective."). Neither the Commonwealth nor Kingston disputes this approach. Thus, we assume for purposes of this appeal that Section 906 prohibits multiple judgments of sentence.

contrary to the Superior Court's holdings in Commonwealth v. Grekis, 601 A.2d 1284 (Pa. Super. 1992), and Commonwealth v. Crocker, 389 A.2d 601 (Pa. Super. 1978).[4]

Before proceeding to our analysis of Section 906, we first dispense with Kingston's reliance upon Crocker and Grekis. Crocker provides no support for Kingston's argument because the appellant in that case was convicted of two different inchoate crimes, not multiple counts of a single inchoate crime. Grekis also is distinguishable. There, the Superior Court rejected as meritless the appellant's argument that his convictions for three separate counts of solicitation to commit involuntary deviate sexual intercourse ("IDSI") violated Section 906. The court explained that the appellant's claim was "without factual basis" because the trial court imposed a sentence for only one of his IDSI convictions and imposed no further penalty for the remaining counts. Grekis, 601 A.2d at 1294. Even so, the court observed that Section 906 was inapplicable because the appellant's three solicitations were designed to culminate in three distinct crimes. At all events, whether Kingston's solicitations were directed toward the commission of the same crime is not before this Court,[5] the

---

[4]    Kingston also argues that his convictions for soliciting perjury should have merged with his convictions for soliciting to hinder apprehension or prosecution. According to Kingston, "both individual crimes were designed to culminate in the commission of the same crime, which was to elicit false testimony under oath, at the time of [t]rial." Brief for Kingston at 9. Kingston did not raise this issue with the PCRA court in his Pa.R.A.P. 1925(b) statement, and the Superior Court did not address it. See Kingston's Rule 1925(b) Statement, 12/5/2012, at 1-2 (unnumbered); Kingston, 2014 WL 10558605, at *5 ("While there are six separate solicitations involved, they all envisioned culmination in but two criminal acts . . . ."). Thus, we need not consider this argument.

[5]    See supra n.2.

language that Kingston cites is *obiter dicta*,[6] and this Court is not bound by the decisions of the Superior Court.[7]

Our analysis begins with the plain language of Section 906, which provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. Pennsylvania courts have applied this provision in situations where a defendant commits two or three inchoate offenses while preparing to commit a single underlying crime. See, e.g., Commonwealth v. Bright, 522 A.2d 573 (Pa. Super. 1987); Commonwealth v. Gonzales, 443 A.2d 301 (Pa. Super. 1982); Commonwealth v. Tingle, 419 A.2d 6 (Pa. Super. 1980). To illustrate, suppose that Dan, with the requisite criminal intent, asks Abe to commit a robbery. Abe agrees and takes a substantial step toward the commission of the robbery. Dan has committed three inchoate crimes.[8] Yet, pursuant to Section 906, he may be punished for only one.

---

[6] In re Kenin's Trust Estate, 23 A.2d 837, 842 (Pa. 1942) ("[I]n every case[,] what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta*." (internal quotation marks omitted)).

[7] Commonwealth v. Cook, 735 A.2d 673, 679 n.8 (Pa. 1999) ("[T]his court is not bound by rulings of a lower court in this Commonwealth.").

[8] Dan is guilty of solicitation because he requested that Abe engage in specific criminal conduct that constitutes robbery. 18 Pa.C.S. § 902(a). Dan also is guilty of attempt because Abe, who is Dan's accomplice, took a substantial step toward the commission of the robbery. 18 Pa.C.S. §§ 901, 306 (defining an accomplice to include a person who, with the intent of promoting or facilitating the commission of an offense, solicits another to commit it). Finally, Dan is guilty of conspiracy because he and Abe agreed that Abe would commit the robbery. 18 Pa.C.S. § 903(a). Dan's intent to promote or to facilitate the robbery satisfies the *mens rea* requirement for all three crimes, see 18 Pa.C.S. §§ 901-903, and Abe's substantial step toward the commission of the robbery also constitutes an overt act necessary to establish conspiracy. See 18 Pa.C.S. § 903(e).

The question that we face distills to whether "more than one of the inchoate crimes" refers to more than one substantive inchoate crime only, or whether it also connotes more than one count of a particular inchoate crime. In effect, Kingston maintains that multiple counts constitute discrete "crimes" in the same way that criminal attempt, criminal solicitation, and criminal conspiracy are discrete "crimes." Although we acknowledge that the word "crimes," at least in the abstract, might encompass two or more violations of a single substantive criminal offense, a close examination of the necessary predicates to Kingston's argument reveals that his interpretation of Section 906 is not so reasonable as to render the statute ambiguous.

This Court does not dissect statutory text and interpret it in a vacuum. See Mishoe v. Erie Ins. Co., 824 A.2d 1153, 1155 (Pa. 2003). We cannot disregard the fact that "inchoate crimes," as used in section 906, precedes three expressly enumerated inchoate offenses. Section 906 forbids convictions for "more than one of the inchoate crimes" listed. 18 Pa.C.S. § 906. To accept Kingston's interpretation would require us to privilege the unspoken "counts" over the express enumeration of distinct inchoate offenses. We perceive no basis for adopting such a tortured interpretation. In contrast to Section 906, the Crimes Code is replete with provisions that speak in terms of "counts" or "violations" of a particular criminal offense. See, e.g., 18 Pa.C.S. § 7507.1(a.1) (listing circumstances under which "separate violations" of this section occur); 18 Pa.C.S. § 6305(f)(2) ("No more than one violation of subsection (a) per person arises out of separate incidents which take place in a 24-hour period."); 18 Pa.C.S. § 3213(f) ("The department shall have the authority to assess a civil penalty of up to $5,000 against any facility for each violation of this subsection."); 18 Pa.C.S. § 4902(e) (providing that the Commonwealth may charge "a single count" of perjury based upon a defendant's mutually exclusive statements); cf. 1 Pa.C.S. § 1930

("Whenever a penalty or forfeiture is provided for the violation of a statute, such penalty or forfeiture shall be construed to be for each such violation."). We have held that all sections of the Crimes Code "are necessarily interrelated and should be read and construed as an entirety." Commonwealth v. Lobiondo, 462 A.2d 662, 664 (Pa. 1983).

Viewed as a whole, Title 18 evinces the General Assembly's appreciation of the distinction between convictions for more than one of several specifically enumerated crimes and convictions for multiple violations of a single crime.[9] The General Assembly included no language in Section 906 limiting convictions for two or more successive violations of a single inchoate crime. Instead, it barred multiple convictions for "more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy." 18 Pa.C.S. § 906.

Kingston's argument that Section 906 "bars the imposition of sentences for multiple counts of the same inchoate charge," Brief for Kingston at 7 (capitalization modified), is untenable. It requires either that we ignore existing words in the statute or that we add additional words to it. We can do neither. Section 906 does not prevent convictions for more than one count of the inchoate crime of solicitation; it applies only to convictions for "more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy." 18 Pa.C.S. § 906. The General Assembly's use of the plural "crimes" is illuminating. Even if Section 906 spoke in terms of convictions for

---

[9] To illustrate the distinction, consider the following hypothetical. Imagine a provision that states, "no person may be employed by more than one of the co-equal branches of the legislative branch or the judicial branch in any five-year period." This language clearly would prohibit a legislator from serving as judge during (or within five years after) his or her legislative tenure. However, it would not prevent a trial court judge from moving to an appellate court, or a member of the House of Representatives from moving to the Senate. The unambiguous statutory text forbids employment in multiple "branches," a prohibition that no one reasonably could construe as barring multiple positions within a single branch.

"more than one of the inchoate crime" of attempt, solicitation, or conspiracy, we would face a baffling command at best. Unless we proceed to inject the word "counts" or "violations" into the statute, the question necessarily would arise: "More than one what?"

Mroz neither agreed nor attempted to commit perjury or to hinder the Commonwealth's prosecution of Kingston. Thus, as it relates to this appeal, Kingston was convicted of solicitation only. Nevertheless, the Superior Court departed from the plain language of Section 906 because it reasoned that, if the General Assembly wanted to prohibit convictions for two or more different inchoate offenses, but not for multiple counts of the same inchoate offense, then it would have replaced the phrase "for conduct designed to commit or to culminate in the commission of the same crime," id., "with the much shorter 'same conduct.'" Kingston, 2014 WL 10558605, at *4. Although that language would be more concise, it would do nothing to clarify that "more than one of the inchoate crimes" means only more than one distinct inchoate crime. The Superior Court majority did not engage in any further analysis of Section 906's text, nor did it explicitly find the statute to be ambiguous.

Even if we were willing to look beyond Section 906's unambiguous language, *contra* 1 Pa.C.S. § 1921(b), none of the traditional principles of statutory interpretation support Kingston's reading. It is not difficult to imagine why the General Assembly would proscribe multiple convictions for distinct inchoate offenses in circumstances where a defendant's conduct was designed to culminate in the commission of a single underlying crime. Successive steps in a criminal undertaking often will constitute a criminal solicitation, a criminal conspiracy, and a criminal attempt, because all three offenses necessarily overlap. All conspiracies follow a solicitation of some kind; there can be no acceptance without an offer. In addition, the difference between an "overt act" necessary to establish a criminal conspiracy and a "substantial step" evidencing a

criminal attempt is one of degree only. See 18 Pa.C.S. §§ 903(e) ("No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired."), 901(a) ("A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.").

It is less clear why the General Assembly would bar plural convictions for defendants who attempt repeatedly to commit the same crime.[10] The Superior Court reasoned that "the policy behind Section 906 rest[s] on a recognition that the harm in inchoate crimes resides 'not in the acts already accomplished, but in the danger that [an] appellant [will] succeed in his criminal endeavor.'" Kingston, 2014 WL 10558605, at *4 (quoting Commonwealth v. Crocker, 389 A.2d 601, 604 (Pa. Super. 1978)). This policy statement is based upon the commentary to Section 5.05(3) of the Model Penal Code ("MPC"), which states that "[a] person may not be convicted of more than one offense defined by this Article for conduct designed to commit or to culminate in the

_____

[10]    Even if the General Assembly intended to accomplish this result, it is unlikely that it would have used Section 906, or a provision like it, to do so. If the General Assembly wanted to restrict, or prohibit outright, multiple solicitation convictions, it likely would have done so within the section defining criminal solicitation. Indeed, the General Assembly did just that in the context of criminal conspiracy. See 18 Pa.C.S. §§ 903(a) (providing that a person is guilty of conspiracy if he agrees with another "person or persons" to commit, attempt to commit, or solicit a crime), 903(b) (defining a single conspiratorial relationship to encompass persons who have conspired to commit the same crime, even if they did not know the identity of some co-conspirators), 903(c) ("If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."). We have held that, "where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent." Fletcher v. Penna. Prop. & Cas. Ins. Guar. Ass'n, 985 A.2d 678, 684 (Pa. 2009).

commission of the same crime." MPC § 5.05(3). As the Superior Court noted in Crocker, the drafters of the MPC explained that Section 5.05(3)

> reflects the policy, frequently stated in these comments, of finding the evil of preparatory action in the danger that it may culminate in the substantive offense that is its object. Thus conceived, there is no warrant for cumulating convictions of attempt, solicitation and conspiracy to commit the same offense.

MPC § 5.05, cmt. 180 (Tent. Draft No. 10, 1960).

> The explanatory note to Section 5.05 of the MPC likewise provides as follows:

> Subsection (3) provides that a person may not be convicted of more than one inchoate offense for conduct designed to culminate in the commission of the same crime. See also Section 1.07(1)(b), which prohibits conviction of both the inchoate offense and the substantive offense that is its object.

MPC § 5.05, note.

The Superior Court acknowledged that Kingston committed six separate solicitations, but found that "they all envisioned culmination in but two criminal acts," perjury and hindering prosecution. Kingston, 2014 WL 10558605, at *5. This conclusion may seem logical in light of the MPC's avowal that inchoate crimes warrant punishment only because of the potential that they might lead to the commission of the predicate offense. See MPC § 5.05, cmt. 180 (Tent. Draft No. 10, 1960). But the Superior Court's reliance upon this language was misplaced. In enacting Chapter nine of our Crimes Code, the General Assembly manifestly rejected the philosophy expressed in the MPC commentary that inchoate criminal liability derives entirely from the risk that an inchoate act might lead to the commission of the underlying substantive offense.

In contrast to the MPC's risk-of-danger approach, this Court has explained that the purpose of Pennsylvania's solicitation statute "is to hold accountable those who would command, encourage, or request the commission of crimes by others." Commonwealth v. Hacker, 15 A.3d 333, 336 (Pa. 2011). Thus, Pennsylvania law

recognizes that inchoate crimes may present significant social dangers unconnected to the risk that they might culminate in the commission of the underlying substantive offense. Consistent with this theory of inchoate criminal liability, the General Assembly has chosen to define the crime of attempt to include situations in which "it would have been impossible for the accused to commit the crime attempted." 18 Pa.C.S. § 901(b). Finally, Pennsylvania law differs from the MPC insofar as our Crimes Code permits convictions for conspiracy or solicitation even if a defendant is convicted of the underlying predicate offense. Compare Commonwealth v. Miller, 364 A.2d 886, 886-87 (Pa. 1976) (holding that criminal conspiracy does not merge into the underlying substantive offense or offenses) with MPC § 1.07(1)(b) ("[A defendant] may not . . . be convicted of more than one offense if one offense consists only of a conspiracy or other form of preparation to commit the other . . . ."). For these reasons, the Superior Court's rationale rests upon the mistaken perception that our Crimes Code imposes liability for inchoate crimes only if there exists a unique danger that a defendant will succeed in his or her criminal endeavor.

In any event, a policy-based analysis cannot overcome the unambiguous language of Section 906. See Penna. Fin. Responsibility Assigned Claims Plan, 664 A.2d at 87 ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Section 906 does not forbid the imposition of consecutive sentences for multiple violations of a single inchoate offense. Accordingly, Kingston's PCRA claim lacks arguable merit.

The order of the Superior Court is reversed.

Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.

Chief Justice Saylor files a dissenting opinion.