J-S33042-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                         :               PENNSYLVANIA
             Appellee         :
                                         :
                v.                :
                                         :
BRAD ALLEN MOYER,             :
                                         :
            Appellant       :       No. 1729 MDA 2016

Appeal from the Judgment of Sentence October 12, 2016
in the Court of Common Pleas of Schuykill County
Criminal Division at No(s): CP-54-CR-0001340-2015

BEFORE:  BENDER, P.J.E., OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JULY 12, 2017**

Brad Allen Moyer (Appellant) appeals from the judgment of sentence imposed on October 12, 2016, after a jury found him guilty of two counts each of aggravated assault by attempting to cause serious bodily injury, aggravated assault by attempting to cause serious bodily injury with a deadly weapon, simple assault, and recklessly endangering another person (REAP).[1]  We affirm.

The events giving rise to the aforementioned charges began the evening of May 28, 2015.  Appellant was residing with his parents, Wendy Moyer and Nevin Randy Moyer (Randy).  Appellant came home early from work that evening because he was having "[m]ajor back problems" while working at his job. N.T., 4/7/2016, at 25.  According to Wendy, when

_____

[1] The trial court also found Appellant guilty of criminal mischief as a summary offense.

* Retired Senior Judge assigned to the Superior Court.

Appellant came home, he appeared "confused, frustrated, [and] in pain." *Id*. at 26. Additionally, "[h]is balance and all was off." *Id*. Wendy "wasn't capable of driving" Appellant to the hospital and also could not reach Randy, so she waited until Randy came home. *Id*. at 27. Wendy felt that Appellant "[w]anted [her] to allow him to just stay at the house and die." *Id*. at 28. Randy arrived home around 10:00 p.m. that night, and Wendy told Randy that Appellant "had consumed a bottle of approximately 250 Tylenol." *Id*. at 34. Before calling 911, Randy went outside to write down Appellant's license plate number, and while Randy was doing that, Appellant went outside and shoved Randy from behind. Randy went back into the house, reached for the phone, and Appellant struck Randy again. When Randy fell, Appellant continued hitting him. Randy called 911, and Appellant left the home.

Pennsylvania State Police Troopers Robert O'Connor and Matthew Barrett were dispatched to the Moyer residence and arrived around 11:00 p.m. Upon arrival, they spoke with both Wendy and Randy, who informed the troopers about the aforementioned domestic incident. They also indicated that Appellant was suicidal. The troopers then decided to canvass the area around the home and put a broadcast throughout the county for Appellant's vehicle, a white Chevrolet Malibu.

Eventually, when the troopers were driving in the right lane on Ringtown Road, they observed a car driving at a high rate of speed toward them. According to Trooper O'Connor, the car's headlights were hitting him

"square in the eyes" which indicated to him that the oncoming car was coming directly toward them and "escape route" was necessary to avoid a collision. *Id*. at 57. Trooper O'Connor then "cut the wheel hard" and drove off the right side of the road. *Id*. The oncoming vehicle, later identified as Appellant's vehicle with Appellant driving, collided with the police vehicle behind the driver's side door. Trooper O'Connor testified that he "felt like there was an attempt at [his] life at that time." *Id*. at 60.

The troopers exited their vehicle and followed the debris field until they found Appellant. They attempted to take him into custody. Appellant was "[n]ot compliant, verbally resistant, cursing at [the troopers], [and] calling [them] names." *Id*. at 64. Eventually, Appellant was handcuffed, and they waited for backup to arrive. Appellant and the troopers went to the hospital to assess their injuries. Both troopers suffered abrasions and bruises due to the crash.

As a result of this series of incidents, Appellant was arrested. A jury trial was held on April 7, 2016, and Appellant was convicted of the aforementioned crimes.[2] On May 17, 2016, Appellant was sentenced to an aggregate term of 9 to 22 years of incarceration. This sentence included consecutive four-to-ten-year sentences for aggravated assault by attempting to cause serious bodily injury and consecutive six-to-12 month sentences for REAP. The trial court determined that the two counts each for aggravated

---

[2] The jury was hung on two counts of attempted murder and two counts of aggravated assault.

assault by attempting to cause serious bodily injury with a deadly weapon and simple assault merged for the purposes of sentencing.

Appellant filed a post-sentence motion, which was granted in part. Specifically, the trial court vacated Appellant's judgment of sentence because the "sentence for the two aggravated assault charges was improper pursuant to 18 Pa.C.S. [] § 906, which prohibits a criminal defendant from being convicted of more than one inchoate crime for conduct designed to culminate in the commission of the same crime." Trial Court Opinion, 8/4/2016, at 2 (internal quotations omitted).

The statute provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. Despite the clear statutory language, the prohibition against multiple convictions has been interpreted as a prohibition against multiple judgments of sentence. **See Commonwealth v. Kingston**, 143 A.3d 917, 922 n.3 (Pa. 2016) ("Although Section 906 bars 'multiple convictions,' the Superior Court has held, and we have assumed without deciding, that the statute proscribes multiple judgments of sentence.").

On August 15, 2016, Appellant was resentenced. The Commonwealth filed a post-sentence motion based upon the decision of our Supreme Court in **Kingston**, filed on August 15, 2016, which interpreted section 906. To

- 4 -

understand the issue in **Kingston**, the Supreme Court offered the following helpful illustration. "[S]uppose that Dan, with the requisite criminal intent, asks Abe to commit a robbery. Abe agrees and takes a substantial step toward the commission of the robbery. Dan has committed three inchoate crimes. Yet, pursuant to Section 906, he may be punished for only one." 143 A.3d at 923. The Supreme Court considered the question of "whether 'more than one of the inchoate crimes' refers to more than one substantive inchoate crime only, or whether it also connotes more than one count of a particular inchoate crime." **Id**. at 924 (citing 18 Pa.C.S. § 906). The Supreme Court offered the following:

> It is not difficult to imagine why the General Assembly would proscribe multiple convictions for distinct inchoate offenses in circumstances where a defendant's conduct was designed to culminate in the commission of a single underlying crime. Successive steps in a criminal undertaking often will constitute a criminal solicitation, a criminal conspiracy, and a criminal attempt, because all three offenses necessarily overlap. All conspiracies follow a solicitation of some kind; there can be no acceptance without an offer. In addition, the difference between an "overt act" necessary to establish a criminal conspiracy and a "substantial step" evidencing a criminal attempt is one of degree only.

**Id**. at 925. Thus, the Supreme Court concluded that the language of Section 906 prohibits more than one conviction for each solicitation, attempt, and conspiracy, but "does not forbid the imposition of consecutive sentences for multiple violations of a single inchoate offense" so long as they culminated in different crimes. **Id**. at 927.

Accordingly, the trial court concluded that Appellant's original sentence was not improper where Appellant was sentenced consecutively for two different aggravated assaults by attempting to cause serious bodily injury convictions. Thus, on October 12, 2016, the trial court vacated its August 15, 2016 sentence and reinstated Appellant's original sentence from May 17, 2016. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth three issues for our review, which we have reordered for ease of disposition.

[1]. Whether a defendant can be found guilty of a second specific intent attempt when the defendant lacked knowledge of the presence or existence of a second victim at the scene.

[2]. Whether the trial court erred in sentencing [Appellant] on two counts of aggravated assault - attempted serious bodily injury in violation of 18 Pa.C.S. [] § 90[6] and the direction of [] *Kingston* [].

3. Whether the Commonwealth committed prosecutorial misconduct in its closing which misconduct impacted the jury's decision despite cautionary instructions.

Appellant's Brief at 1 (unnecessary capitalization omitted).

As Appellant's first two issues concern his two convictions and sentences for aggravated assault by attempting to cause serious bodily injury, we address them together. Appellant's argument as to both issues can be distilled to the following: a defendant may not be convicted and sentenced for two separate inchoate crimes where there was one act (*ie.*

- 6 -

driving the vehicle into an oncoming vehicle), even where there are two separate victims as a result of this act.

Specifically, Appellant suggests that it was improper to conclude that he "could be found guilty of a separate attempt on an unknown occupant of an oncoming vehicle in addition to the known driver." Appellant's Brief at 8. In addition, Appellant argues that "[t]he Commonwealth has failed to prove that [his] intention was anything other than suicide."[3] *Id*. at 10.

Appellant further maintains that the trial court erred at re-sentencing in how it applied *Kingston*. Appellant contends that in this case "there was a single attempt not multiple violations of a single inchoate offense." Appellant's Brief at 8 (emphasis removed). Appellant again suggests that because he was unaware "of the number of occupants in the vehicle[,]" a finding of multiple attempts was in error. *Id*. Further, Appellant suggests that "[e]ven though a jury may return a verdict on more than one inchoate crime, the [t]rial [c]ourt may sentence on only one of those crimes." Appellant's Brief at 6.

To the extent Appellant is challenging the sufficiency of the evidence to sustain his convictions, we set forth the following.

---

[3] Appellant also argues the trial court erred in instructing the jury as to these offenses. *See* Appellant's Brief at 8 ("The issue is whether the [t]rial [c]ourt erred in instructing the jury that [Appellant] could be found guilty of a separate attempt on an unknown occupant of an oncoming vehicle in addition to the known driver."). However, because Appellant did not present a challenge to this jury instruction in his Pa.R.A.P. 1925(b) statement, it is waived. *See* Pa.R.A.P. 302(a).

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendants crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Tukhi*, 149 A.3d 881, 886–87 (Pa. Super. 2016) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722–23 (Pa. Super. 2013) (citations and internal quotation marks omitted)).

The statute governing Appellant's convictions provides that "[a] person is guilty of aggravated assault if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the

evidence supports a finding of an attempt to cause such injury.[4] A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. A person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result[.] As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa. Super. 2012) (internal quotations and citations omitted).

The trial court considered these arguments and concluded that "[w]hen one crashes his vehicle into another vehicle at 90 mph, there is evidence from which a jury may infer the requisite intent to injure any or all occupants of the target vehicle, even if the perpetrator cannot actually see who is present therein." Trial Court Opinion, 8/4/2016, at 5.

At trial, the Commonwealth presented evidence from accident reconstruction specialist, Robert W. Herb. Herb testified that the police vehicle was cruising at 33 miles per hour (mph) and was in the process of slowing down when the vehicle abruptly accelerated to 100 percent and veered to the right. N.T., 4/7/2016, at 127. Appellant's car was going 91 mph when it hit the police vehicle. ***Id***. "[I]n the five seconds leading up to the impact, [Appellant's] vehicle increased speed from … 79 to 91 [mph]

---

[4] The Commonwealth does not suggest that the troopers suffered serious bodily injury.

hour. The accelerator pedal was stepped on at 100 percent capacity for that time, and there was never any braking involved." *Id*. at 128. "[T]he front left corner of [Appellant's car] struck the left side of the police car…, which is right at the back of the driver's seat." *Id*. at 129. "After the impact, [Appellant's car] continued [moving] … [a]nd then there was impact with [a] large tree." *Id*.

Despite the fact that Appellant testified that "suicide was the only thing on [his] mind," the jury could have inferred based upon the foregoing accident reconstruction that Appellant was attempting to cause serious bodily injury to the driver of the vehicle. *Id*. at 197. *See Commonwealth v. Fierst*, 620 A.2d 1196 (Pa. Super. 1993) (upholding aggravated assault conviction where Fierst drove into the opposing lane of traffic in an apparent attempt to commit suicide and crashed into the driver-victim, but the driver-victim did not suffer injury when swerving and crashing to avoid the collision).

We cannot agree the same is true with respect to an unknown passenger. Nonetheless, as the Commonwealth suggests, we conclude that the doctrine of transferred intent applies to the unknown passenger in the vehicle under these circumstances. *See* Commonwealth's Brief at 10 ("As it was established beyond a reasonable doubt that Appellant intended to cause serious bodily injury to (at a minimum) the driver of the vehicle which he intentionally drove 90 mph into, this intent was transferred, pursuant to the

transferred intent doctrine, to the other Trooper riding as a passenger in the same vehicle.").

The doctrine of transferred intent is codified in the following statute:

**Divergence between result designed or contemplated and actual result.--**When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

> (1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

> (2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S. § 303(b).

This Court examined the doctrine of transferred intent in *Commonwealth v. Jackson*, 955 A.2d 441 (Pa. Super. 2008). In that case, Jackson and others made an attempt to murder Charles Wesley while Wesley was in the midst of a group of police officers who were investigating an earlier attempt on Wesley's life. In so doing, Jackson fired his gun in the vicinity of seven other people on the scene, and was correspondingly convicted of seven counts of aggravated assault. On appeal, Jackson claimed, similar to Appellant in the case s*ub judice*, that the evidence was insufficient to sustain those convictions:

> While [Jackson] admits that he intended to shoot Wesley, [Jackson] contends that these other persons were simply in the way. [Jackson] argues that the Commonwealth failed to establish that he had the specific intent to cause serious bodily injury to any of these persons, and thus, the requisite intent for his aggravated assault convictions is lacking.

*Id.* at 445-46. This Court agreed with Jackson's position that the Commonwealth did not establish his specific intent to cause serious bodily injury to the seven people.

> [T]he evidence shows that [the seven individuals who served as the victims for the seven counts of aggravated assault] were near [Jackson's] intended victim. The evidence shows that [Jackson] fired a deadly weapon toward them. There is, however, no other evidence, in the form of circumstances, actions or words, occurring before, during, or after the shooting, that tends to demonstrate that [Jackson] specifically intended to inflict injury upon these particular persons. Therefore, the only circumstance in the record from which it may be inferred that [Jackson] had the intent to cause these persons serious bodily injury was his firing a deadly weapon in their direction. Based upon the totality of the circumstances, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that [Jackson] harbored the specific intent to cause serious bodily injury with a deadly weapon to any of these persons.

*Id.* at 448. Thus, this Court turned to consider whether the intent element of the assaults was satisfied under the doctrine of transferred intent.

> The Commonwealth argues that under the doctrine, [Jackson's] admitted intent to shoot and cause Wesley serious bodily harm, satisfies the intent element for [Jackson's] aggravated assault convictions of these persons. [Jackson] counters that the doctrine of transferred intent does not apply in this case because these persons were not actually injured. It is [Jackson's] position that the doctrine is not meant to apply and has not been applied to a charge of aggravated assault, when criminal liability is premised on the attempt to cause serious bodily injury to another. [Jackson] further argues that 18 Pa.C.S.[] § 303(b), enacted to reflect existing law, reveals that

the doctrine is to be used only where a defendant shoots a gun at a person, intending to cause serious bodily injury, but hits another, or where the defendant shoots the intended victim, but does not cause serious harm.

*Id.* (internal citation omitted) (citing **State v. Brady**, 903 A.2d 870 (Md. 2006) (holding that the doctrine of transferred intent is inapplicable to crimes of attempt because, in such instances, the defendant commits a complete crime against the intended victim)).

In holding that the doctrine of transferred intent applied in **Jackson**, this Court concluded that Jackson's specific intent to kill Wesley transferred to the seven bystanders, satisfying the intent elements for Jackson's aggravated assaults of those seven people. Given this precedent, we affirm Appellant's convictions and sentence as to Trooper Barrett. The jury found the totality of the circumstances demonstrated that Appellant had the specific intent to cause serious bodily injury to the driver of the vehicle. Under **Jackson**, Appellant's intent to injure Trooper O'Conner seriously transferred to Trooper Barrett, even if Appellant did not know of his existence, satisfying the intent element of the crimes. Based on the foregoing, we hold that the evidence was sufficient to sustain Appellant's convictions for aggravated assault by attempting to cause serious bodily injury as to both victims.

Having concluded that the evidence was sufficient to sustain both convictions, we now turn to the issue of whether Appellant could be sentenced on both convictions. "[A] claim that crimes should have merged

for purposes of sentencing challenges the legality of his sentence." *Commonwealth v. Glass*, 50 A.3d 720, 730 (Pa. Super. 2012). In *Commonwealth v. Frisbie*, 485 A.2d 1098, 1101 (Pa. 1984), our Supreme Court held "that the imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized and, consequently, does not violate the double jeopardy clause of the Fifth Amendment." In *Frisbie*, the defendant, "while fleeing from police officers in downtown Philadelphia, drove his car through a crowded intersection and seriously injured nine pedestrians." 485 A.2d at 1099. He was charged with nine counts of REAP, and the trial court sentenced him separately for each one.

On appeal to this Court, the defendant argued that his one act could not result in nine separate sentences even where there were nine separate victims. This Court agreed and held that defendant's "single action of propell[ing] his vehicle forward through a crowd of persons causing injury to numerous persons … [could] support but one sentence." *Id* (internal quotation marks omitted).

However, our Supreme Court disagreed and concluded that "[a]n offender whose unlawful act harms or is likely to harm many people is more culpable, and thus deserving of more severe punishment, than an offender whose unlawful act harms only one person." *Id*. at 1101. Thus, the Supreme Court upheld all nine sentences.

Based upon the foregoing, it was proper for the trial court to sentence Appellant separately for each victim. Thus, Appellant is not entitled to relief. Moreover, as discussed *supra*, the Supreme Court in **Kingston** held that it is not a violation of Section 906 to sentence an individual for two inchoate offenses so long as two separate crimes are committed. Here, because we have held that Appellant has committed two separate crimes against two separate victims, the trial court's sentencing on both attempts was proper.

We next consider Appellant's argument that he was deprived of a fair trial based upon two statements made in the Commonwealth's closing argument. First, Appellant argues that the trial court erred in denying a mistrial when the Commonwealth argued that incidents like that of May 28, 2015 had "happened before" and were a "ritual." N.T., 4/7/2016, at 254. Appellant's counsel argued that such a statement was "grounds for a mistrial." **Id**. at 258. On appeal, Appellant suggests that this was an attempt by the Commonwealth "to establish that [Appellant] was a bad person." Appellant's Brief at 13.

In considering this issue, we are mindful of the following.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that in reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial

- 15 -

misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa. Super. 2009) (internal citations and quotation marks omitted).

Here, Trooper Barrett testified that when he arrived at the Moyer residence, he "observed [it] to have holes all over the walls." N.T., 4/7/2016, at 76. The Moyers "explained that [the holes were] a result of their son's anger in the past, not only on that day but in the past." ***Id***. Counsel for Appellant did not object to this testimony. Moreover, the trial court sustained Appellant's objection during the closing argument and offered the following curative instruction.

> Ladies and gentlemen, you should totally disregard any argument by the Commonwealth about anything that, that is alleged to have happened or suggested it happened at anytime other than the night in question. You're not allowed to consider anything other than the evidence about what happened that night.

***Id***. at 259. "The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1184 (Pa. 2011). Thus, because the Commonwealth's comments were based upon testimony in the record, and the trial court sustained the objection and offered a curative instruction, we hold that the trial court did not err by not granting a mistrial.

Appellant also argues that he is entitled to a mistrial based upon the Commonwealth's statement in its closing argument about police officers

being more deserving of sympathy as victims because "they put their lives on the line to protect and serve." N.T., 4/7/2016, at 265; Appellant's Brief at 11. Counsel for Appellant objected. The trial court sustained the objection and offered a curative instruction to the jury.[5] On appeal, Appellant argues that based on this prosecutorial misconduct, a "mistrial is appropriate in this case." Appellant's Brief 13.

However, the record reveals that with respect to this statement, Appellant did not request specifically a mistrial. "[E]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." **Commonwealth v. Sandusky**, 77 A.3d 663, 670 (Pa. Super. 2013). Thus, where, as here, Appellant did not request a mistrial, he has waived this issue on appeal. **See** Pa.R.A.P. 302(a); **Commonwealth v. Brown**, 134 A.3d 1097, 1107 (Pa. Super. 2016) (holding that where counsel for defendant objects during prosecutor's closing statement, the objection is sustained, and the defendant does not request a mistrial, then the issue is waived for review). Based upon the foregoing, Appellant is not entitled to relief with respect to his issues about the Commonwealth's closing argument.

---

[5] The trial court provided the following: "Ladies and gentlemen, you have to decide this case based on the facts presented, not in any way as a statement about support of police officers in general. The issue is whether or not the Commonwealth has established the charges that have been brought against the Defendant in this case." N.T., 4/7/2016, at 266.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2017