# [J-90-2024]
# IN THE SUPREME COURT OF PENNSYLVANIA
# MIDDLE DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| MARK R. SCHMIDT | : | No. 32 MAP 2024 |
| | : | |
| v. | : | Appeal from the Order of the Commonwealth Court at No. 1039 CD 2021, entered on November 14, 2023, Reversing the Decision of the Workers' Compensation Appeal Board at No. A20-0368 entered on September 8, 2021 |
| | : | |
| | : | |
| SCHMIDT, KIRIFIDES AND RASSIAS, PC (WORKERS' COMPENSATION APPEAL BOARD) | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | ARGUED: November 20, 2024 |
| APPEAL OF: SCHMIDT, KIRIFIDES AND RASSIAS, PC | : | |
| | : | |

## OPINION

**JUSTICE BROBSON**　　　　　　　　　　　　**DECIDED: March 20, 2025**

Pursuant to Section 306(f.1)(1)(i) of the Workers' Compensation Act (WCA),[1] 77 P.S. § 531(1)(i), "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." In this discretionary appeal, we must determine whether cannabinoid oil (CBD oil) prescribed to a claimant by a health care provider is included in the meaning of the phrase "medicines and supplies." For the reasons set forth below, we hold that any item that is part of a health care provider's treatment plan for a claimant's work-related injury falls within the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

purview of the broad-encompassing phrase "medicines and supplies" as provided in Section 306(f.1)(1)(i). We further hold that, in such circumstances, the cost containment provisions of the WCA[2] and the attendant Pennsylvania Department of Labor (Department) regulations, both of which apply to a health care provider, do not apply to a claimant. We, therefore, affirm the Commonwealth Court's order.

## I. Background

On April 14, 2017, Mark R. Schmidt (Claimant), a workers' compensation attorney, sustained a work-related injury in the course and scope of his employment with Schmidt, Kirifides and Rassias, PC (Employer). On that date, Claimant was squatting to load files into a trial bag, tipped the trial bag onto its wheels, experienced "a sudden sharp increase in low back and right leg pain," and fell over onto his side. (Workers Compensation Judge's Decision, 04/07/2020, at 3.) A workers' compensation judge (WCJ), through claim proceedings, described Claimant's work-related injury as an aggravation of his preexisting degenerative disc disease at L4-5 and L5-S1 with radiculopathy.

Claimant continued to work since the date of his work-related injury, but his pain progressively worsened. The treatment for Claimant's work-related injury, however, was limited to pain management. This is because Claimant expressed a desire to exhaust all non-surgical options before undergoing surgery due to the inherent risks associated therewith and the likelihood of a prolonged recovery time. To that end, Claimant took, *inter alia*, OxyContin and Oxycodone multiple times per day as prescribed by his medical provider.

---

[2] *See, e.g.,* 77 P.S. § 531(5) (providing, in relevant part, that "[t]he employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section").

The extensive driving and sitting in courtroom chairs associated with Claimant's employment continued to aggravate his pain. In order to manage that aggravation, William Murphy, D.O., Claimant's physician, recommended that Claimant increase his medication dosages. Claimant opposed Dr. Murphy's recommendation, explaining that an increase in his medication would affect his ability to think, focus, and adequately represent his clients. After trying other non-surgical interventions, such as aqua therapy and injections, Dr. Murphy prescribed CBD oil in lieu of increasing Claimant's OxyContin and Oxycodone dosages. Dr. Murphy's prescription for CBD oil provided: "CBD oil/topical. Apply to affected area PRN as directed." (Reproduced Record (R.R.) at 79a.) Claimant purchased both CBD topical lotion[3] and CBD oil over the counter from a specialty natural remedy store, rather than a pharmacy. Claimant used the CBD topical lotion and the CBD oil in accordance with the directions on the packaging materials, namely by applying the CBD topical lotion on the skin of his lower back and using the provided dropper to place the CBD oil under his tongue. Claimant's use of the CBD topical lotion and CBD oil to treat the pain he is experiencing as a result of the work-related injury appears to have been successful; he continues to avoid the immediate need for surgery and has not increased his Oxycontin and Oxycodone dosages. According to Claimant, the CBD oil is more effective than the CBD topical lotion in treating his pain.

Claimant provided Employer with his CBD oil prescription and the receipts for his purchases thereof. Employer, however, refused to reimburse Claimant for his out-of-pocket CBD oil costs on the basis that CBD oil is not a pharmaceutical drug. As a result, on October 2, 2019, Claimant filed a penalty petition against Employer, claiming that Employer violated the WCA by failing to reimburse him for his out-of-pocket costs for

---

[3] While we acknowledge that Claimant purchased both CBD oil and CBD lotion, we discern no distinction therewith for the purpose of our discussion.

medical treatment—*i.e.*, the costs associated with his use of CBD oil.  By decision and order dated April 7, 2020, the WCJ granted Claimant's penalty petition and ordered Employer to pay the costs associated with Claimant's use of CBD oil; the WCJ did not, however, assess penalties against Employer.  In doing so, the WCJ concluded that Claimant's CBD oil is a "supply" under Section 306(f.1)(1)(i) of the WCA and that Claimant is not a "health care provider."  The WCJ also concluded that, because Claimant did not acquire the CBD oil from a "health care provider," the workers' compensation cost containment regulations do not apply, and, therefore, Employer is liable for the entirety of the costs associated with Claimant's use of CBD oil.

Employer appealed to the Workers' Compensation Appeal Board (Board), and the Board, in a divided decision, reversed the WCJ's decision and order.  In doing so, the Board concluded that, regardless of "whether CBD [o]il constitutes medical 'supplies' under Section 306(f.1)(1)(i) of the [WCA]," Employer's failure to reimburse Claimant for the costs associated with his use thereof did not constitute a violation of the WCA because "Claimant did not follow the rules triggering [Employer's] obligation to pay" and, even if he did, CBD oil cannot be a "supply" under the WCA "as the [Food and Drug Administration (FDA)] has concluded that it has not been proven safe or effective."  (Board's Decision, 09/08/2021, at 5, 9-10.)  For these reasons, the Board determined that the WCJ should have denied Claimant's penalty petition.

Three of the Board's Commissioners dissented.  Commissioner James Zurick, joined by Commissioner David Wilderman, authored a dissenting opinion, wherein he explained that, in light of the humanitarian purposes of the WCA, he would have affirmed the WCJ's decision and order on the basis that CBD oil, as a supplement, is included within the WCA's broad definition of supplies.  As a result, he would have concluded that the WCJ did not err by requiring Employer to reimburse Claimant for the costs associated

with his use of CBD oil. Commissioner Zurick further opined that the WCA does not require Claimant, who is not a health care provider, to submit his reimbursement requests on HCFA forms or any other standard form and that, by requiring him to do so, the majority placed an "impossible" burden on Claimant. (Board's Decision (Zurick, C., dissenting) at 4.)

In a divided, reported opinion, an *en banc* panel of the Commonwealth Court reversed the Board's order. *Schmidt v. Schmidt, Kirifides and Rassias, PC*, 305 A.3d 1137 (Pa. Cmwlth. 2023). In doing so, the Commonwealth Court acknowledged that, because this case involved a penalty petition, Claimant had the burden of proving that Employer violated the WCA by not paying for the expenses associated with his purchase of CBD oil. To support that claim, Claimant submitted receipts for his CBD oil but no other form or other records because he is not a provider.

The Commonwealth Court first determined that the Board erred and violated its standard of review by disregarding the factual findings of the WCJ that were supported by substantial evidence, including: (1) Employer was declared liable to pay for the medical expenses which are reasonable and necessary for the treatment of Claimant's work-related injury, (2) Dr. Murphy prescribed Claimant CBD oil to treat his work-related injury,[4] (3) CBD oil is a supply, and, thus, (4) Employer is responsible to pay for the expenses Claimant incurred associated therewith but did not do so.

---

[4] The Commonwealth Court also determined that the Board erred by disregarding the WCJ's findings of fact, which, according to that court, were supported by substantial evidence, by "suggesting that Claimant misused a topical lotion by ingesting it." *Schmidt*, 305 A.3d at 1151. In doing so, the Commonwealth Court noted that "Dr. Murphy's April 8, 2019 prescription stated: 'CBD oil/topical,'" and, "[t]hus, the prescription gave Claimant the option of using CBD oil or topical treatments." *Id.* at 1150 (quoting R.R. at 74a). Further, the Commonwealth Court highlighted, "Dr. Murphy stated in his November 5, 2019 note regarding the CBD oil prescription: 'In addition to medications, I have recommended that [Claimant] try CBD oil.'" *Id.* at 1150-51 (quoting R.R. at 82a (…continued)

The Commonwealth Court also concluded that the Board erred by expressly declining to address the central issue presented in this matter—*i.e.*, whether CBD oil is a medicine or supply within the meaning of Section 306(f.1) of the WCA. In doing so, the Commonwealth Court explained that the Board emphasized Section 306(f.1)(5) of the WCA (providing "employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section"), rather than Section 306(f.1)(1)(i) of the WCA, and incorrectly determined that Claimant is not entitled to reimbursement because he did not submit the necessary bills and records. The Commonwealth Court noted, however, that, because Claimant is not a "provider," Claimant only needed to demonstrate that CBD oil is a medicine or supply.[5] The Commonwealth Court also stated that, "[t]o the extent that the issue before [the c]ourt is strictly an issue of statutory interpretation, [the c]ourt must determine specifically whether CBD oil fits within either the definition of 'medicines' or 'supplies.'" *Id.* at 1155. To that end, the Commonwealth Court explained that "[m]edicine is commonly defined as 'a substance or preparation used in treating disease[;]' [']something that affects well-being;['] [']a substance (such as a drug or potion) used to treat something other than disease.[']" *Id.* at 1156 (some alterations in original) (quoting *Medicine*, Merriam Webster,

_____

(emphasis omitted)). "Importantly," the Commonwealth Court recognized, "Dr. Murphy does not state in his note that the CBD is for topical use only. The first receipt reflects Claimant purchased two items—a lotion and an oil. The WCJ credited Claimant's explanation that he used each type *as directed* by the package instructions." *Id.* at 1150 (emphasis in original) (citation omitted)*; (see* R.R. at 70a).

[5] In this regard, the Commonwealth Court stated that, "[t]o the extent the issue before [the c]ourt is a mixed question of law and fact, based upon [the c]ourt's review, and drawing all reasonable inferences in Claimant's favor on the [p]enalty [p]etition, as it must, the credible record evidence supports [the] WCJ['s] . . . conclusion that CBD oil is a *supply* for purposes of Section 306(f.1)(1)(i) of the [WCA]." *Schmidt*, 305 A.3d at 1154 (emphasis in original).

https://www.merriam-webster.com/dictionary/medicine (last visited February 5, 2025)). The Commonwealth Court further explained that, "[s]imilarly, the term 'medical supplies' is defined as '[a]ny item that is essential for *treating* illness or injury.'" *Id.* (second alteration in original) (emphasis in original) (quoting *Medical Supplies*, Segen's Medical Dictionary (2012), https://medical-dictionary.thefreedictionary.com/medical+supplies (last visited February 5, 2025)).

Applying the foregoing definitions here, the Commonwealth Court concluded that, for purposes of Section 306(f.1)(1)(i), CBD oil is both a medicine and supply, reasoning that, in this matter, "Dr. Murphy prescribed CBD oil to Claimant to treat his pain" and that "[t]he CBD oil has benefitted Claimant's well-being by reducing his pain, eliminating his need to increase the use of highly addictive opioid medications, and forestalling expensive and risky surgery." *Id.* (citations omitted). The Commonwealth Court also noted that there was no utilization review (UR) petition before that court, such that any argument regarding whether Claimant's use of CBD oil is reasonable and necessary was not properly before the court. In that regard, the Commonwealth Court further explained that whether a treatment is FDA-approved for a particular purpose is a challenge to the reasonableness and necessity of the treatment that may be raised only in the context of the UR process provided in Section 306(f.1)(1)(6) of the WCA. *See* 77 P.S. § 531(6) (providing, in relevant part, that "disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the . . . provisions" set forth in Section 306(f.1)(6)(i)-(iv)). "Moreover," the Commonwealth Court stated, "FDA approval of a treatment is not a requirement under the [WCA], and despite that the FDA has not approved some firms' marketing of CBD oil as a dietary supplement, its use is not otherwise illegal." *Schmidt*, 305 A.3d at 1164 (emphasis omitted). To that end, the Commonwealth Court noted that "the [WCA] does not expressly prohibit Claimant's CBD

oil use merely because some firms' illegally marketed CBD oil, and the WCJ found that Claimant used the CBD oil . . . as directed." *Id.* (emphasis omitted).

Lastly, the Commonwealth Court concluded that "the Board erred by finding that Claimant was required to submit the type of billing forms and medical reports required of treatment providers to obtain reimbursement for the costs of medicine and supplies to treat his work injuries." *Id.* at 1160 (emphasis omitted) (citing *Fegley v. Firestone Tire & Rubber (Workers' Comp. Appeal Bd.)*, 291 A.3d 940 (Pa. Cmwlth. 2023)). Relying on Section 306(f.1)(5) of the WCA and Sections 127.201 and 127.202(a) of the Department's regulations, 34 Pa. Code §§ 127.201, 127.202(a), the Commonwealth Court explained that "the clear statutory and regulatory language mandates providers, not employees, to submit bills on specified forms for a billed treatment to be paid." *Schmidt*, 305 A.3d at 1158. "Consequently," the Commonwealth Court stated "Claimant was not required to submit a [Health Care Financing Administration (]HCFA[)] form and/or periodic medical reports in order to receive reimbursement from Employer. Rather, in order to obtain reimbursement, Claimant only had to submit his doctor's prescription for CBD oil to treat the pain caused by his work injury and his receipts therefor, which he did." *Id.* at 1159 (footnotes omitted).

Judge Wallace authored a concurring opinion, wherein she agreed with the majority in most respects and indicated that she, too, would reverse the Board's order, albeit on alternative grounds. Judge Wallace wrote separately to express her belief that CBD oil is a medicine rather than a supply.[6] In doing so, Judge Wallace opined that "[t]he

---

[6] Preliminarily, Judge Wallace noted that she understood how the majority and the dissent could differ on the issue of whether Dr. Murphy prescribed CBD oil for oral ingestion because Dr. Murphy's prescription is subject to different interpretations. *Schmidt*, 305 A.3d at 1178 (Wallace, J. concurring). Judge Wallace explained, however, that when she considered "Claimant's receipts, [Claimant's credible] testimony, . . . and Dr. Murphy's treatment notes in chronologic order, [she could] only conclude Dr. Murphy intended his (…continued)

definition the [m]ajority attribute[d] to 'supplies' is so broad that all 'medicines' are also 'supplies,'" and, consequently, such an interpretation effectively renders the word "medicine" in the WCA as meaningless. *Id.* at 1180 (Wallace, J., concurring). Engaging in her own statutory construction, Judge Wallace reasoned, "when [she] consult[s] a dictionary to ascertain the meanings of 'medicines' and 'supplies' in accordance with common and approved usage, [she] would utilize only definitions that do not subsume one another." *Id.* In this regard, Judge Wallace noted that "'medicine' is defined as 'any drug or remedy.'" *Id.* For purposes of Section 306(f.1) of the WCA, Judge Wallace stated that "[a] medicine is not a drug . . . because Section 306(f.1) separately uses the term 'drug' on numerous occasions." *Id.* at 1180-81. On the other hand, Judge Wallace noted, "[a] 'remedy' is defined as 'an agent that cures disease or alleviates its symptoms.'" *Id.* at 1181. Judge Wallace, thus, like the majority, opined that "Dr. Murphy prescribed CBD oil as an agent to alleviate Claimant's pain symptoms," and, consequently, she "would conclude that, under the facts presented in this case, CBD oil qualifies as a 'medicine' under Section 306(f.1) of the [WCA]." *Id.*

Judge Fizzano Cannon, joined by Judge Dumas, authored a dissenting opinion, wherein she opined that Employer cannot be subject to a penalty under the WCA for refusing to reimburse Claimant for the costs associated with his use of CBD oil based on a variety of reasons. First, she explained that "Claimant did not provide proper medical support for his reimbursement request and did not trigger Employer's duty to pay." *Schmidt*, 305 A.3d at 1177 (Fizzano Cannon, J., dissenting). Additionally, she noted that "CBD oil cannot be marketed for a therapeutic purpose, or even as a dietary supplement, without premarketing approval from the FDA, which has not been given. Claimant's oral use of CBD oil as a treatment for pain is not legal; it has not been approved by the FDA

---

prescription to include CBD oil for oral ingestion and that Claimant's oral ingestion of CBD oil was consistent with Dr. Murphy's treatment plan." *Id.* at 1179 (Wallace, J., concurring).

because it has not been shown to be either safe or effective for such a use." *Id.* For these reasons, Judge Fizzano Cannon concluded that Claimant's CBD oil "is not subject to reimbursement under the [WCA]."[7] *Id.* Finally, Judge Fizzano Cannon stated that "[t]he Board correctly declined to decide whether dietary supplement CBD oil is a 'supply' under the [WCA]. Further, it does not fit the intended statutory meaning of a supply. Moreover, even designating it as a supply would not render it subject to reimbursement." *Id.*

## II. ISSUES

This Court granted discretionary review to consider the following issues, rephrased by this Court for clarity:

> (1) Do the terms "medical services" and "medicines and supplies" as used in Section 306(f.1), 77 P.S. § 531, of the [WCA], include [CBD oil], specifically, as well as dietary supplements, generally, and products that may be purchased without a prescription from a health[]care provider?
>
> (2) Do the cost containment regulations of the [WCA] apply to CBD oil?
>
> (3) Does Section 306(f.1) of the [WCA], 77 P.S. § 531, require employers/insurers to reimburse claimants, directly, for out of-pocket expenses for "medical services" and "medicine and supplies," and if so, are claimants obligated to submit supporting documentation, such as medical records or prescriptions, or specified forms, such as HCFA forms, before they may receive such reimbursement?

*Schmidt v. Schmidt, Kirifides and Rassias, PC*, 318 A.3d 92 (Pa. 2024) (per curiam). In order to resolve these issues, we must engage in statutory interpretation and, therefore,

---

[7] In Judge Fizzano Cannon's view, Dr. Murphy only prescribed CBD oil for topical use, not oral consumption as evinced by the lack of record evidence "to support an interpretation of either the prescription or the contemplation of Claimant's doctor as relating to other than topical use of CBD." *Schmidt*, 305 A.3d at 1174 (Fizzano-Cannon, J., dissenting). While she acknowledged the WCJ's findings concerning the benefits Claimant received from his use of CBD oil, she reiterated that "the pertinent legal issue is not whether Claimant obtains pain relief from ingesting CBD oil, but rather, whether such a use, which is both off-label and not approved by the FDA, and which was not included in his doctor's treatment plan, is subject to reimbursement by Employer under the [WCA]." *Id.* at 1175 (footnote omitted).

we are presented with questions of law. Accordingly, our standard of review is de novo, and our scope of review is plenary. *Hartford Ins. Grp. Ex rel. Chunli Chen v. Kamara*, 199 A.3d 841, 845 (Pa. 2018); *Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties)*, 99 A.3d 397, 406 (Pa. 2014).

We are guided in our analysis by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa. C.S. § 1921(b)). It is also true that "we interpret statutory language not in isolation[] but with reference to the context in which it appears." *Commonwealth v. Kingston*, 143 A.3d 917, 922, (Pa. 2016). We do not "dissect statutory text and interpret it in a vacuum." *Id.* at 924. The foregoing is an essential recognition of the reality that "[t]o strip a word from its context is to strip that word of its meaning." *Biden v. Nebraska*, 600 U.S. 482, 511 (2023) (Barrett, J., concurring). With respect to the WCA, we have recognized that it "is remedial in nature and is intended to benefit workers." *Martin v. Workers' Comp. Appeal Bd. (Emmaus Bakery)*, 652 A.2d 1301, 1303 (Pa. 1995). It, thus, "must be liberally construed in order to effectuate its humanitarian objectives." *Id.*

If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)). It is only "[w]hen the words of the statute are not explicit" that we will glean the intention of the General Assembly by resorting to other considerations. 1 Pa. C.S. § 1921(c). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage," but "technical

words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a).

## III. DISCUSSION

We begin our analysis by setting forth the relevant statute. Section 306(f.1)(1)(i) of the WCA provides, in relevant part: "The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). Focusing on the terms "medicines" and "supplies," we observe that neither the WCA nor Section 1991 of the Statutory Construction Act provide a default definition for either of those terms. Insofar as this matter concerns whether CBD oil is a "medicine" or "supply" as those terms are used in Section 306(f.1)(1)(i), we are unconvinced that we must consider those terms independently and fit CBD oil into either category in order for an employer to be responsible to pay for it pursuant to this section. Rather, we can consider the terms together as the single phrase "medicines and supplies." Under the plain language of Section 306(f.1)(1)(i), "[t]he employer shall provide payment . . . for. . . *medicines and supplies*." 77 P.S. § 531(1)(i) (emphasis added). Given that an employer is responsible for payment for *both* "medicines and supplies," ascribing separate meanings to the individual terms would present a distinction without a difference. For that reason, in this case, we consider the meaning of the phrase "medicines and supplies" as set forth in the relevant statute.

In pursuit of our objective, we also note our previous recognition that the WCA "clearly and unambiguously provides that employers and insurers are obligated to pay providers . . . for reasonable and necessary *treatment or services* connected to claimants'

work-related injuries." *Keystone RX LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 265 A.3d 322, 332 (Pa. 2021) (citing 77 P.S. § 531(1)(i)) (emphasis added). We have also noted that Section 306(f.1) of the WCA "is the one clause in Article III [of the WCA] devoted to the employer's obligation to pay *medical expenses*." *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner)*, 39 A.3d 287, 292 (Pa. 2012) (emphasis added). Similarly, appellate courts of this Commonwealth have relied on Section 306(f.1)(1)(i) when mandating that employers pay for employees' reasonable and necessary *medical expenses and treatment*. *See Fegley*, 291 A.3d at 951 (relying on, *inter alia*, Section 306(f.1)(1)(i) and stating court "presume[s], as [it] must, that the General Assembly was aware of [the WCA's] mandate that employers pay for employees' reasonable and necessary *medical treatment* of work injuries when it authorized medical marijuana as a medical treatment") (emphasis added).[8] Given the foregoing, it appears that we have viewed Section 306(f.1)(1) as the defining provision of employers' and insurers' responsibilities regarding payment of medical expenses for certain treatments and services—*i.e.*, those that are reasonable and necessary to a claimant's work-related injury. Accordingly, we do not limit our construction of Section 306(f.1)(1)(i) to the individual terms "medicines" and "supplies." Rather, in so construing, we give effect to

---

[8] *See also Luzerne Cnty. v. Groner* (Pa. Cmwlth., No. 1057 C.D. 2020, filed Apr. 11, 2022), slip op. at 7 ("Section 306(f.1)(1)(i) of the [WCA] requires an employer to pay for reasonable medical *expenses* necessary to treat a work injury." (emphasis added)); *W&W Contractors, Inc. v. Workers' Comp. Appeal Bd.* (Pa. Cmwlth, No. 836 C.D. 2020, filed Jun. 28, 2021), slip op. at 20 ("An employer's obligation to pay for medical *expenses* extends to those that are causally related to the work injury." (citing 77 P.S. § 531(1)(i) (emphasis added))); *see also Physical Therapy Inst., Inc. v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Donegal Mutual Ins. Co.)* (Pa. Cmwlth, No. 1599 C.D. 2018, filed Jul. 10, 2019), slip op. at 2 & n.3 (determining petitioner was "'provider' of the *services* rendered pursuant to the [WCA]" (citing*, inter alia*, 77 P.S. § 531(f)(1)(i) (emphasis added))).

"medicines and supplies" as provided in the statute as the broad-encompassing phrase intended by the General Assembly, evinced by the plain language thereof.

Based on the above, we construe "medicines and supplies" as any item that is part of a health care provider's treatment plan for a work-related injury. To that end, Section 306(f.1)(1)(i) of the WCA requires an employer to provide payment irrespective of an item's specific denotation as a "medicine" or "supply" so long as the item is part of a health care provider's treatment plan for a work-related injury.[9] Consequently, we do not resort to other principles of statutory construction to elicit the meaning of the individual terms "medicines" and "supplies" where we find nothing in the plain reading of the statutory language to be unclear or ambiguous. *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004) (explaining that "the best indication of legislative intent is the plain language of a statute" and that "[c]ourts may resort to other considerations to divine legislative intent only when the words of the statute are not explicit"); *Zane v. Friends Hosp.*, 836 A.2d 25, 31 (Pa. 2003) ("Only after the words of the statute are found to be unclear or ambiguous should a reviewing court further engage in an attempt to ascertain the intent of the Legislature through use of the various tools provided in the Statutory Construction Act.").

In light of our construction of the phrase "medicines and supplies," we clarify that the proper inquiry to resolve whether an employer is responsible for payment of a certain item under Section 306(f.1)(1)(i) of the WCA is whether a health care provider prescribes the item as part of the treatment plan associated with the work-related injury, not whether

---

[9] While we recognize that not every item that is part of a health care provider's treatment plan may be deemed reasonable and/or necessary, challenges thereto may be raised before a utilization review organization as part of the utilization review process under the WCA. *See* 77 P.S. § 531(6)(i)-(iv). Those challenges, however, do not inform whether an item is a "medicine or supply" in the first instance under Section 306(f.1)(1)(i) of the WCA.

that item is distinctly either a "medicine" or "supply." Further, our construction allows us to separate ourselves from the process by which a licensed physician, presumedly using his or her professional judgment, determines that a certain item is a component of a treatment plan for a work-related injury. In other words, we refrain from stepping into the shoes of a health care provider merely because an item—*i.e.*, here, CBD oil—might not squarely fit into the *separate* terms "medicines" or "supplies." *See, e.g.*, *Kretchmar v. Com.*, 831 A.2d 793, 799 (Pa. Cmwlth. 2003) ("Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979))). In sum, we reiterate that we refrain from ascribing separate meaning to the terms "medicines" and "supplies" in Section 306(f.1)(1)(i); rather, we construe the phrase "medicines and supplies" as a broad-encompassing phrase that includes any item that is part of a health care provider's plan for a work-related injury.

In an effort to circumvent our construction of the plain and unambiguous language of Section 306(f.1)(1)(i) of the WCA, Employer argues that CBD[10] is "an unregulated chemical compound extracted from hemp and marijuana that the [FDA] has determined is unsafe and cannot be sold or marketed for any purpose." (Employer's Brief (Br.) at 7.) Employer explains that the Agriculture Improvement Act of 2018 (2018 Farm Bill), 7 U.S.C. § 1639o(1), "'legalized' hemp only if the hemp has a delta-9 tetrahydrocannabinol (THC) concentration of less than 0.3 percent on a dry weight basis." (*Id.* at 9.) Employer further explains that "[d]elta-8 THC products and delta-10 THC

---

[10] In making its arguments to this Court, Employer generally refers to "CBD products." For the purpose of our discussion, however, the distinction between "CBD products" generally and "CBD oil" is irrelevant. We, thus, for the sake of consistency, only refer to "CBD oil" in our discussion.

products made from CBD in hemp became very popular in the United States after the 2018 Farm Bill because delta-8 and delta-10 THC were technically 'legal' under the definition of hemp"—*i.e.*, they are excluded from the Schedule I definition of hemp under the federal Controlled Substances Act, 21 U.S.C. §§ 801-904. (*Id.* at 10, 15.) Employer maintains that "'CBD oil' is sometimes made from CBD that has high concentrations of delt[a]-8 THC," and "Claimant . . . never proved that the CBD oil he was ingesting was indeed THC free or that it had no serious side effects." (*Id.* at 10)

Employer also contends that "CBD oil is not always THC free and is potentially harmful with various side effects according to the [FDA] and the Centers for Disease Control" (CDC). (*Id.* (capitalization omitted)). More specifically, Employer suggests that "the FDA mandated that CBD products cannot be [marketed or] sold as dietary supplements," "refused to regulate CBD under existing regulations," explained that "selling unapproved CBD products with unsubstantiated medical claims violated federal law and put consumers at risk," and "reported multiple adverse effects in patients who had consumed CBD delta-8 THC products," while the CDC has "warned consumers about the dangers of CBD products"—*i.e.*, "that delta-8 THC intoxication could lead to adverse effects (similar to delta-9 THC), including lethargy, coordination problems, slurred speech, heart rate problems, low blood pressure, difficulty breathing, and coma." (*Id.* at 11, 12, 14, 18 (capitalization omitted)). Employer notes that, despite the FDA's and CDC's concerns, "[t]here is no regulation of delta[-]8 CBD products like CBD oil in the Commonwealth or at the federal level because hemp-derived delta-8 CBD products such as 'CBD oil' are technically 'legal' under the 2018 Farm Bill because the delta-9 THC concentration is less than 0.3 percent." (*Id.* at 15 (emphasis omitted).) Additionally, in anticipation of Claimant's argument that he is seeking reimbursement only for THC free CBD oil, Employer maintains that "[t]here is no way for an uneducated consumer to

determine if CBD oil is THC[]free because of the lack of federal or state labeling regulations for CBD products." (*Id.* at 16.) Employer explains that "[t]he label in this case says nothing about specific THC content" but, instead, simply "says that the product is a 'hemp extract.'" (*Id.* (citing R.R. at 174a).)

In making these arguments, Employer focuses its attention, not on the plain and unambiguous language of the statute in question—*i.e.*, Section 306(f.1)(1)(i) of the WCA– but on CBD oil's alleged shortcomings. Simply stated, there is nothing in the statute that requires "medicines and supplies" to be regulated by the FDA. Also, the biggest obstacle which Employer must overcome, which it does not, is showing that the CBD oil purchased by Claimant herein is illegal. Contrary to Employer's claim, CBD oil is *lawfully* sold over the counter in this Commonwealth. *See* 7 U.S.C. § 1639o(1) (providing hemp is legal if it has a delta-9 THC "concentration of not more than 0.3 percent on a dry weight basis"). To the extent that Employer suggests that, in these circumstances, workers' compensation tribunals need to evaluate the contents of CBD oil every time that it is challenged before them to determine, effectively, the legality of the CBD oil, such a suggestion is implausible. Further, contrary to Employer's suggestion, claimants do not bear the burden of proving that the CBD oil which they are using is THC free or has been attributed to any serious side effects. As a matter of fact, Employer, here, conceded that it had not raised any challenge relative to the CBD oil used by Claimant herein before the WCJ or the Board. Insofar as Employer desires to challenge the reasonableness and necessity of Claimant's treatment for his work-related injury, those challenges are better raised before a utilization review organization (URO) and otherwise are extraneous to our disposition in this matter—*i.e.*, ascribing meaning to the phrase "medicines and supplies" as used in Section 306(f.1)(1)(i) of the WCA. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 46 (1999) ("The purpose of utilization review, and the sole authority conferred

upon a URO, is to determine 'whether the treatment under review is reasonable or necessary for the medical condition of the employee' in light of 'generally accepted treatment protocols.' [34 Pa. Code §§ 127.470(a), 127.467. Reviewers must examine the treating provider's medical records, [34 Pa. Code] § 127.459, 127.460], and must give the provider an opportunity to discuss the treatment under review, [34 Pa. Code] § 127.469. Any doubt as to the reasonableness and necessity of a given procedure must be resolved in favor of the employee. [34 Pa. Code] § 127.471(b)." (footnote omitted)).

Given the above, we are unpersuaded by Employer's attempt to exclude CBD oil from the phrase "medicines and supplies." Instead, we reiterate our conclusion that any item that is part of a health care provider's treatment plan falls within the purview of the broad-encompassing phrase "medicines and supplies" as provided in Section 306(f.1)(1)(i) of the WCA. Employers, thus, are required to provide payment for the expenses associated therewith.

In light of our foregoing conclusion, we next turn to consider whether the cost containment provisions of the WCA and attendant Department regulations require Claimant, who is not a provider, to comply therewith.[11] For example, Section 306(f.1)(2) of the WCA provides, *inter alia*, that "[a]ny *provider* who treats an injured employe shall

---

[11] Employer did not offer any arguments regarding this issue. Instead, Employer maintained that "[b]ecause CBD oil and dietary supplements purchased at a health food store without presenting a prescription are not 'medicines' or 'supplies' or 'medical services' this Court does not need to reach the cost containment and out-of-pocket reimbursement issues." (Employer's Br. at 37). The American Property Casualty Insurance Association, the Insurance Federation of Pennsylvania, the Pennsylvania Defense Institute, the School District Insurance Consortium, the United Parcel Service, and the Pennsylvania Chamber of Business and Industry (collectively, Employer's Amici) assert that the Commonwealth Court erred by concluding that the cost containment provisions of the WCA and attendant Department regulations do not apply to Claimant because employers and insurers have a "right" to medical reports in order establish the causal connection between a work-related injury and the treatment therefor prior to being required to pay for the treatment.

be required to file periodic reports with the employer on a form prescribed by the department." 77 P.S. § 531(2) (emphasis added). Section 127.201(b) of the Department's regulations provides that "[c]ost-based *providers* shall submit a detailed bill including the service codes consistent with the service codes submitted to the Bureau on the detailed charge master in accordance with [Section] 127.55(b)." 34 Pa. Code § 127.201(b) (emphasis added). Section 127.202(a) also provides that "[u]ntil a *provider* submits bills on one of the forms specified in [Section] 127.201 (relating to medical bills—standard forms) insurers are not required to pay for the treatment billed." 34 Pa. Code § 127.202(a) (emphasis added). Notably, the preceding provisions and regulations all relate to the obligations of *providers*. Accordingly, we must determine whether Claimant is a "provider" under the WCA.

Section 109 of the WCA defines a "provider" as a "health care provider" and further defines "health care provider," in relevant part, as "any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services." 77 P.S. § 29. Here, there is no dispute that Claimant is not a "provider" as that term is plainly and unambiguously defined under the WCA. Accordingly, like the Commonwealth Court, we conclude that Claimant was not required to comply with the cost containment provisions of the WCA and attendant Department regulations. Although non-providers are not required to comply with the cost containment provisions and regulations, we, nevertheless, emphasize that our holding in no way absolves health care providers, who prescribe medicines and supplies for work-related injuries, from their obligations under the relevant cost containment provisions and regulations[12]

---

[12] We note that the parties appear to dispute whether Claimant's use of CBD oil—*i.e.*, by oral ingestion—was part of Dr. Murphy's treatment plan for the work-related injury. That issue, however, is not before this Court.

In sum, we conclude that any item that is part of a health care provider's treatment plan for a work-related injury falls within the purview of the broad-encompassing phrase "medicines and supplies" as provided in Section 306(f.1)(1)(i) of the WCA. We further hold that the cost containment provisions of the WCA and attendant Department regulations do not apply to non-providers, such that Claimant, a non-provider, was not required to comply therewith. We, therefore, affirm the Commonwealth Court's order.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy, and McCaffery join the opinion.