# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Thornbury Township and<br>Middletown Township | **CASES CONSOLIDATED** |
| v. | No. 330 C.D. 2024<br>Trial Court No.: CV-2022-009816 |
| County of Delaware and<br>Delaware County Health Department | No. 603 C.D. 2024<br>Trial Court No.: CV-2023-001002 |
| County of Delaware and<br>Delaware County Health Department | No. 618 C.D. 2024<br>Trial Court No.: CV-2023-000375 |
| v. | No. 619 C.D. 2024<br>Trial Court No.: CV-2023-000380 |
| Clifton Heights Borough,<br>Eddystone Borough, Prospect<br>Park Borough, Ridley Park Borough,<br>Lower Chichester Township, and<br>Thornbury Township | |
| County of Delaware and<br>Delaware County Health Department | |
| v. | |
| Clifton Heights Borough,<br>Eddystone Borough, Prospect<br>Park Borough, Ridley Park Borough,<br>Lower Chichester Township, and<br>Thornbury Township | |
| Clifton Heights Borough and<br>Eddystone Borough | |
| v. | |
| County of Delaware and Delaware<br>County Health Department | |

Appeal of: County of Delaware and    :
Delaware County Health Department   :    Argued: March 5, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE COVEY                             FILED: May 6, 2025


        The County of Delaware (County)[1] and the County Health Department (DCHD) (collectively, Appellants) appeal from the Delaware County Common Pleas Court's (trial court) February 28, 2024 order that permanently enjoined them from conducting any environmental health inspections and/or licensing of any food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools located in Thornbury Township (Thornbury),[2] Middletown Township (Middletown),[3] Clifton Heights Borough (Clifton Heights), Eddystone Borough (Eddystone), Ridley Park Borough (Ridley Park), and Lower Chichester Township (Lower Chichester)[4] (collectively, Appellees).[5] Essentially, Appellants present one issue for this Court's review: whether the trial court erred as a matter of law by concluding that Appellees satisfied the requirements for a permanent injunction.[6] After review, this Court affirms.

---

[1] The County is a Second Class County governed by a Home Rule Charter adopted in 1975.

[2] Thornbury is a Second Class Township.

[3] Middletown is a Second Class Township.

[4] Lower Chichester is a First Class Township.

[5] Prospect Park Borough is no longer a party to this matter.

[6] Appellants present three issues in their Statement of Questions Involved: whether the trial court erred as a matter of law by concluding that: (1) Appellees are exempt from DCHD's

2

**Background**

On February 28, 2022, the Commonwealth of Pennsylvania (Commonwealth), Department of Health (DOH) certified DCHD as a county health department authorized to assume responsibility for conducting the inspections outlined in the Local Health Administration Law (Law/Act 315),[7] specifically, routine and complaint-based environmental health inspections for various facilities including food facilities, food trucks, private wells and on-site septic systems, campgrounds, organized camps, mobile home parks, public bathing places/pools, and institutions including nursing homes and daycare centers. *See* Reproduced Record (R.R.) at 567a-568a.

On March 3, 2022, the County notified all 49 of its municipalities that DCHD would begin exercising its powers on April 2, 2022. *See* R.R. at 117a, 119a-120a. Appellants also enacted DCHD Rules and Regulations (DCHD's Regulations). Section 100.3 of DCHD's Regulations proclaims:

---

jurisdiction; (2) Appellees satisfied the elements necessary for a permanent injunction against Appellants; and (3) Appellants failed to satisfy the elements necessary for a permanent injunction against Appellees. *See* Appellants' Br. at 5.

On April 11, 2024, Appellees filed a Motion to Quash Appellants' appeal in this Court on the basis that Appellants failed to file a post-trial motion in the trial court. Appellants opposed the Motion to Quash, arguing that because their appeal was filed pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 311(a)(4) (interlocutory appeals as of right), post-trial motions were not required. On June 12, 2024, this Court denied the Motion to Quash, stating that post-trial motions are unnecessary where, as here, the appeal is interlocutory. Lower Chichester argues that since the declaratory judgment portion of the trial court's February 28, 2024 order is not immediately appealable under Rule 311(a)(4), this Court lacks jurisdiction to review that issue. This Court agrees. While Rule 311(a)(4) permits an immediate appeal from the trial court's order granting the injunction, it does not also give this Court jurisdiction over the declaratory judgment portion of that order. Because Appellants represented in opposition to Appellees' Motion to Quash that this appeal was interlocutory, and this Court denied the quashal on that basis, the only matter before this Court is whether the trial court erred by granting the permanent injunction in Appellees' favor. This Court has restated Appellants' issues accordingly.

[7] Act of August 24, 1951, P.L. 1304, *as amended*, 16 P.S. §§ 12001-12030.

3

No city, township, borough, or other municipality located within [the] County, except those municipalities which are exempt from the jurisdiction of [DCHD] by Section 14 of the [Law, 16 P.S. § 12014,] shall adopt any rule, regulation, standard, or procedure not in conformity with [DCHD's Regulations], and any such rule, regulation, standard, or procedure presently in existence shall be superseded to the extent that it is inconsistent with [DCHD's Regulations].

R.R. at 847a; *see also* R.R. at 653a.

By March 17, 2022 letter, Thornbury notified Appellants that it was exempt from DCHD's jurisdiction and asked DCHD to "refrain from any further communication with its residents, restaurants[,] and businesses within [Thornbury] to avoid unnecessary confusion." R.R. at 42a. By April 1, 2022 letter, Lower Chichester also notified Appellants that it was exempt from DCHD's jurisdiction. *See* R.R. at 1558a.

On April 2, 2022, DCHD began exercising its powers and duties under the Law and, when attempting to conduct inspections in certain areas of Appellees' jurisdiction, DCHD experienced confrontation or was not permitted in facilities to conduct inspections. By April 4, 2022 letter, Appellants informed Lower Chichester that they disagreed with its interpretation of the Law. *See* R.R. at 1560a. By April 8, 2022 letter, Lower Chichester sought guidance from DOH on how to proceed given Appellants' rigid position that Lower Chichester must relent to DCHD.[8] *See*

---

[8] Lower Chichester stated in the April 8, 2022 letter:

There are certainly functions that a County health department could perform that would benefit [Lower Chichester] residents and businesses. But why is this being presented as a hostile takeover rather than a cooperative effort? Why can't both [Lower Chichester] and the County provide discrete areas of health services to [Lower Chichester] residents and businesses? Why is [Lower Chichester's] only option to surrender and abandon is Board of Health?

R.R. at 1562a.

4

R.R. at 1561a-1562a. By April 19, 2022 letter, DOH's acting Secretary directed the municipalities to amicably work together to provide services to the community.[9] *See* R.R. at 1563a-1564a. By June 1, 2022 letter to DOH and Appellants, Lower Chichester requested a meeting to discuss their differing interpretations of the Law. *See* R.R. at 1575a-1576a. Although Appellants responded and asked Lower Chichester to "stay tuned," no meeting ever took place. R.R. at 776a, 1546a.

In November/December 2022, DCHD sent letters to Appellees' residents and businesses declaring, *inter alia*, that beginning January 1, 2023, DCHD will provide the following services under the Division of Environmental Health:

- Conduct routine, follow up, plan review and complaint inspections for food facilities, public bathing places, institutions (early childhood learning centers, hospitals, long term care facilities, and schools), temporary events serving food, farmer's markets, mobile food facilities, organized camps and campgrounds, and mobile home parks
- Implement the Mosquito Borne Disease Control program
- Investigate animal bites to *humans*
- Investigate public health nuisances and complaints
- Investigate environmental hazards
- Monitor compliance of our County Health Codes and our federal and state health regulations
- Investigate adverse health events and conditions from communicable disease like food, water, air, and vector borne outbreaks

*See* R.R. at 34a-35a.

---

[9] DOH's acting Secretary responded:

> While this is a matter of importance that need[s] to be resolved between [the] County and Lower Chichester [], [DOH] supports amicable cooperation between [DCHD] . . . and [Lower Chichester's] Board of Health . . . . While there exist similar and distinguishable duties, each provides benefits that together can be valuable to Lower Chichester [].

R.R. at 1564a. Notably, Section 10(d) of the Law specifies that DCHD "may cooperate with the departments or boards of health of municipalities exempt from its jurisdiction in accordance with [S]ection 14 of th[e Law.]" 16 P.S. § 12010(d).

On December 22, 2022, Thornbury and Middletown filed a complaint in the trial court (Docket No. CV-2022-9816) against Appellants seeking a declaration that they are permitted to continue to administer their health codes until such time as they choose to join DCHD. On January 19, 2023, Thornbury and Middletown filed an emergency petition to enjoin Appellants from conducting any environmental health inspections and/or licensing of their food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools.[10] Thornbury and Middletown averred that: (1) imposing DCHD's Regulations and related costs and fees was unfair, and lacked uniformity with similarly situated businesses and residences, sometimes causing multiple billing and inspections; (2) DCHD employees entered businesses with valid 2022-2023 licenses claiming it had the right to inspect the establishments even if it was not issuing a new license; (3) despite being aware of the lengthy litigation surrounding this matter and issues still under contention, DCHD employees told confused business owners that DCHD won the litigation; and (4) DCHD was not prepared or equipped to undertake the full responsibility of the municipal health departments (particularly sewage and hoarding matters) and referred such matters back to the municipalities. *See* R.R. at 65a-67a.

On January 13, 2023, Appellants filed a complaint against Thornbury, Lower Chichester, Clifton Heights, Eddystone, Ridley Park, and Prospect Park Borough (Prospect Park) in the trial court (Docket No. CV-2023-380) seeking a declaration that Appellants' jurisdiction included those municipalities and a

---

[10] On October 4, 2022, the trial court granted a preliminary injunction enjoining DCHD from conducting any environmental health inspections and/or licensing any food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools in Springfield, Ridley, Upper Chichester, Aston, Tinicum, Darby, and Marple Townships.

6

permanent injunction to keep those municipalities from interfering with DCHD's duties. In their complaint, Appellants contended that none of those municipalities had departments or boards of health when DCHD was established. *See* R.R. at 376a. Appellants averred that those municipalities had instructed their local establishments not to comply with DCHD's inspections. Appellants named specific eating establishments and schools that either refused to comply with DCHD's inspections and/or were inspected and licensed by their municipalities after DCHD was authorized to conduct them. Appellants claimed that those municipalities actively interfered with DCHD exercising its authority to inspect and license local establishments. Appellants asserted that since inspections and licensing fees are a local health department's primary income source, Appellants' refusal to submit to DCHD's authority was less about community health and more about fee generation and job maintenance. Appellants proclaimed that any confusion created among municipal licensees about which agency (DOH, DCHD, or the municipality) was responsible for a given health law arose from the municipalities encouraging their licensees to oppose Appellants' statutorily mandated duties. Also on January 13, 2023, Appellants filed a request for a preliminary injunction in the trial court (Docket No. CV-2023-375) seeking to enjoin Thornbury, Lower Chichester, Clifton Heights, Eddystone, Ridley Park, and Prospect Park from interfering with DCHD's duties.

On February 3, 2023, Clifton Heights and Eddystone filed a complaint in the trial court (Docket No. CV-2023-1002) seeking declaratory and permanent injunctive relief against Appellants. Therein, they averred that the County violated its Home Rule Charter which prohibited the County from exercising any power or function in the County already exercised by a municipality when the listed conditions are met, and the County had not met those necessary conditions; in particular, they asserted that the County failed to file an ordinance with the clerk or secretary of each of the affected municipalities within 30 days of its enactment. *See*

7

Section 2963(1) of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2963(1). Also on February 23, 2023, Clifton Heights and Eddystone filed a petition for emergency preliminary injunction seeking to enjoin Appellants from conducting any environmental health inspections and/or licensing at their food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools within their boundaries.

On January 4, 2024, the trial court consolidated the four actions. By January 10, 2024 order, the trial court preliminarily enjoined DCHD from conducting any restaurant inspections and related activities in Appellees' municipalities until after the trial scheduled for February 1, 2024. On February 1, 2024, the trial court conducted a trial at which Appellees produced witnesses who testified that they had operational departments or boards of health as of February 28, 2022, when DCHD was certified. Accordingly, by February 28, 2024 order, the trial court permanently enjoined DCHD from conducting any environmental health inspections and/or licensing any food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools in Appellees' municipalities.

On March 22, 2024, Appellants appealed to this Court.[11] On April 2, 2024, the trial court directed Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). That same day, Appellants filed their Rule

---

[11] "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *K. H. v. Pa. Interscholastic Athletic Ass'n*, 277 A.3d 638, 645 n.6 (Pa. Cmwlth. 2022) (quoting *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003)). Moreover, "[t]his appeal requires [this Court] to interpret statutory provisions and thus it presents a pure question of law over which [this Court's] standard of review is de novo and our scope of review is plenary." *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018).

By July 10, 2024 Order, this Court *sua sponte* consolidated these appeals.

1925(b) Statement. On May 15, 2024, the trial court filed its opinion pursuant to Rule 1925(a) (Trial Ct. Rule 1925(a) Op.).

**Discussion**

Preliminarily,

> [t]o establish the right to a permanent injunction,[12] a party must show that[:] "(1) the right to relief is clear; (2) the relief is necessary to prevent an injury which cannot be compensated by damages; and (3) greater injury will occur from refusing the injunction than from granting it." [*City of Phila. v.*] *A Kensington Joint, LLC*, 301 A.3d [988,] 998 [(Pa. Cmwlth. 2023)] (quoting *First Phila. Preparatory Charter Sch. v. Dep't of Educ.*, 179 A.3d 128, 132 n.2 (Pa. Cmwlth. 2018)).

*City of Phila. v. Lindley Tower Realty Co., L.P.*, 327 A.3d 328, 337 (Pa. Cmwlth. 2024).

1. Clear Right to Relief

Appellants argue that the trial court erred by concluding that Appellees are exempt from DCHD's jurisdiction, particularly where Appellees failed to show that DOH was not locally administering their health laws as of February 28, 2024.[13] Appellees rejoin that the trial court properly ruled that they are exempt from

---

[12] Although the trial court's May 15, 2024 opinion cites law applicable to preliminary injunctions, *see* Trial Ct. 2/28/2024 Order at 7; *see also* Trial Ct. Rule 1925(a) Op. at 16, the trial court's February 28, 2024 order clearly granted a permanent injunction. *See* Trial Ct. 2/28/2024 Order at 8.

[13] Appellants also argue that the trial court improperly placed the burden of proving the lack of exemption upon Appellants, when it should have been Appellees' burden. Lower Chichester retorts that because Appellants raised the issue of the trial court's improper burden shifting for the first time in this appeal, that issue is waived. Based on this Court's review, Appellants did not raise that issue before the trial court. Accordingly, Appellants waived that issue in this appeal. *See* Rule 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).).

DCHD's jurisdiction because (a) they had health departments prior to DCHD's creation (a fact that Appellants conceded) and (b) Appellees did not rely on DOH for the administration of their health laws. Appellees further retort that merely seeking guidance from DOH does not equate to DOH's administration of health laws within their municipalities.

Whether the exemption language in Sections 13 and 14 of the Law applies to Appellees is an issue of first impression that requires statutory interpretation. The Pennsylvania Supreme Court has explained:

> In all matters involving statutory interpretation, we apply the Statutory Construction Act [of 1972 (SCA)], 1 Pa.C.S. §§ 1501[-1991], which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). . . . A statute's plain language generally provides the best indication of legislative intent. *See, e.g.*, *McGrory v. Dep't of Transp.*, . . . 915 A.2d 1155, 1158 ([Pa.] 2007); *Commonwealth v. Gilmour Mfg. Co.*, . . . 822 A.2d 676, 679 ([Pa.] 2003); *P[a.] Fin. Responsibility Assigned Claims Plan v. English*, . . . 664 A.2d 84, 87 ([Pa.] 1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words.").

*Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016).

Section 13 of the Law, entitled "Jurisdiction of county departments of health," provides:

> **The jurisdiction of an established county department of health** in the county or counties which have established it **shall extend to <u>all townships of the second class</u>, to <u>all municipalities</u>**[14] <u>**which do not have departments or boards of health**</u>[15] **at the time of the establishment of**

---

[14] Section 3 of the Law defines *municipality* to include boroughs and first and second class townships. *See* 16 P.S. § 12003.

[15] Section 2 of the Disease Prevention and Control Law of 1955, Act of April 23, 1956, P.L. (1955) 1510, *as amended*, defines *local board or department of health* as "[t]he board of health or the department of public health of a city, borough, incorporated town or township of the first class, or a county department of health, or joint county department of health." 35 P.S. § 521.2.

> **the county department of health**, **to all municipalities** or parts of municipalities **in which the local administration of health laws** at the time of the establishment of the county department of health **is being performed by** [**DOH**] **for any reason whatsoever**, to all municipalities which dissolve their departments or boards of health in accordance with [S]ection 15 of this [Law, 16 P.S. § 12015],[16] and to certain parts of municipalities as provided in [S]ections 15 and 16 of this [Law, 16 P.S. §§ 12015-12016].

16 P.S. § 12013 (bold and underline emphasis added). Thus, the plain language of Section 13 of the Law clearly makes second class townships and municipalities that do not already have health boards/departments, and municipalities for whom DOH administers the local health laws, subject to DCHD's jurisdiction.

Section 14 of the Law, entitled "Municipalities exempt from jurisdiction of county departments of health," states:

> **Any municipality having a department or board of health at the time of the establishment of a county department if located in the county in which the municipality is located**, or in a county in which part of the municipality is located, **shall be exempt** from the jurisdiction of the county department of health; **except** that **any municipality in which the local administration of health laws**, at the time of the establishment of the county department of health, **is being performed by** [**DOH**] **for any reason whatsoever** shall not be exempt from the jurisdiction of the county department of health.

16 P.S. § 12014 (bold and underline emphasis added). Thus, the plain language of Section 14 of the Law makes even municipalities with existing health

---

[16] Added by Section 3 of the Act of December 16, 1959, P.L. 1847. Section 15(a) of the Law authorizes a municipality within a county that has a county health department to enact an ordinance making it subject to the county health department and "[u]pon the enactment of such ordinance, the municipality shall dissolve its department or board of health and cease to exercise the powers vested by law in such department or board[.]" 16 P.S. § 12015(a).

11

boards/departments, like Appellees, subject to DCHD's jurisdiction if DOH administered their local health laws as of February 28, 2022, for any reason.

Section 1601(a) of The First Class Township Code[17] authorizes commissioners in first class townships to establish boards of health or health officer offices to administer their health ordinances. *See* 53 P.S. § 56601(a). The health officer may administer and enforce the township's health ordinances and related laws. *See* Section 1605(b)(1) of The First Class Township Code, 53 P.S. § 56605(b)(1). Section 1601(c) of The First Class Township Code further allows a first class township to dissolve that board/office and come under the jurisdiction of the county department of health pursuant to the Law. *See* 53 P.S. § 56601(c). Here, the record evidence supports the trial court's findings that Lower Chichester has had a board of health since at least 2008 and has not enacted an ordinance to dissolve it. *See* R.R. at 843a, 1543a, 1546a, 1548a-1552a; *see also* Trial Ct. Rule 1925(a) Op. at 11, 13.

Section 3001 of The Second Class Township Code[18] authorizes the boards of supervisors in second class townships to appoint boards of health/health officers. *See* 53 P.S. § 68001.[19] Section 3006(a) of The Second Class Township Code provides that "[t]he board of health shall enforce the health and sanitation laws of this Commonwealth and any regulations adopted under those laws and the health and sanitation laws and regulations of the township." 53 P.S. § 68006(a). Here, the record evidence supports the trial court's findings that Middletown and Thornbury established their boards of health in 1991 and 2021, respectively, and have not enacted ordinances to dissolve them. *See* R.R. at 806a-807a, 843a, 1597a; *see also* Trial Ct. Rule 1925(a) Op. at 11, 13.

---

[17] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101-58501.
[18] Act of May 1, 1933, P.L. 103 *as amended*, 53 P.S. §§ 65101-68701.
[19] Added by Section 1 of the Act of November 1, 1995, P.L. 350.

12

Section 3101(a) of the Borough Code[20] authorizes borough councils to establish boards of health or health officer offices to administer their health ordinances. *See* 8 Pa.C.S. § 3101(a). Section 3101(c) of the Borough Code further allows a borough counsel to dissolve that board/office and come under the jurisdiction of the county department of health pursuant to the Law. *See* 8 Pa.C.S. § 3101(c). A borough health officer may administer and enforce the borough's health ordinances and related laws. *See* Section 3105(b)(1) of the Borough Code, 8 Pa.C.S. § 3105(b)(1). Here, the record evidence supports the trial court's findings that Ridley Park established its board of health in 1908, Clifton Heights has had a board of health since 2001, and Eddystone has had a board of health since at least 2020, and they have not enacted ordinances to dissolve them. *See* 757a-795a; 843a, 1103a-1109a, 1591a, 1595a; *see also* Trial Ct. Rule 1925(a) Op. at 11, 13.

Sections 13 and 14 of the Law do not specify the quality or breadth of a municipality's health board/officer but, rather, merely states that the exemption applies if the municipality *had one* as of February 28, 2022. *See* 16 P.S. §§ 12013, 12014. Because the record evidence in the instant case supported the trial court's findings that Appellees *had* operational boards of health/officers when DCHD was established on February 28, 2022, under Section 14 of the Law, Appellees were only subject to DCHD's jurisdiction if DOH *performed* Appellees' *local administration of health laws* for any reason.

Notably, the Law does not define the phrases *local administration of health laws* nor *performed by DOH* as they are used in Sections 13 and 14 of the Law.

> In such cases, [S]ection 1903(a) of the [SCA] provides that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved

---

[20] 8 Pa.C.S. §§ 101-3501.

usage[.]" 1 Pa.C.S. § 1903(a). "Moreover, in ascertaining the common and approved usage or meaning, we may have to resort to the dictionary definitions of the terms left undefined by the legislature." *P.R. v. Dep['t] of Pub[.] Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000), *aff'd*, . . . 801 A.2d 478 ([Pa.] 2002) (citations omitted).

*Kegerreis Outdoor Advert. Co. v. Dep't of Transp.*, 157 A.3d 1033, 1039-40 (Pa. Cmwlth. 2017). Relevant here, the common and approved usage of the term *administration* is "performance of executive duties : MANAGEMENT."[21] The common and approved usage of the term *administer* is "to manage or supervise the execution, use, or conduct of."[22] *Perform* means to "CARRY OUT, DO."[23]

Importantly, Thornbury, Middletown, Clifton Heights, and Eddystone specifically sought to enjoin Appellants from conducting environmental health inspections and/or licensing of any food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools. *See* R.R. at 106a-107a, 542a. The record evidence supported that each of the Appellees had carried out those responsibilities within their borders as of February 28, 2022. *See* R.R. at 759a-761a, 769a-770a, 777a-778a, 786a-787a, 792a, 802a, 810a, 822a, 1102a, 1408a, 1439a-1443a, 1596a, 1598a. The County's Public Health Director, Melissa Lyons, admitted at trial that she did not know whether DOH or any other state agency has administered any of Appellees' local health laws for any reason. *See* R.R. at 627a. Although Appellees' witnesses admitted that their local health boards/officers might in the future have to seek DOH's guidance in certain circumstances,[24] those witnesses declared that no such need had previously arisen relative to environmental health inspections and/or licensing of food and beverage retail establishments, food

---

[21] www.merriam-webster.com/dictionary/administration (last visited May 5, 2025).

[22] www.merriam-webster.com/dictionary/administer (last visited May 5, 2025).

[23] www.merriam-webster.com/dictionary/perform (last visited May 5, 2025).

[24] *See* Appellants' Br. at 8-13; *see also* R.R. at 788a (Lower Chichester), 793a (Eddystone), 803a (Clifton Heights), 810a, 819a (Middletown), 824a (Thornbury/Ridley).

14

stores, public and parochial schools, and public swimming pools,[25] *see* R.R. at 768a, 777a, 786a, 788a, 793a, 799a, 803a, 808a, 818a-819a, 823a, 1408a, 1544a, 1585a, 1596a, 1598a, or that Appellees' local health boards/officers would be unable to meet their citizens' needs without DOH's assistance. Based on that evidence, the trial court found that DOH did not *perform* or *administer* Appellees' local health laws related to environmental health inspections and/or licensing of any food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools, which is the activity the trial court enjoined DCHD from carrying out. *See* Trial Ct. Rule 1925(a) Op. at 13-15.

Moreover, to determine the General Assembly's intent, Pennsylvania courts "interpret statutory language not in isolation, but with reference to the context in which it appears." *Kingston*, 143 A.3d at 922. In addition, "courts may not look beyond the plain meaning of a statute under the guise of pursuing its spirit." *In re Petitions to Open Ballot Box Pursuant to 25 P.S. §3261(A)*, 295 A.3d 325, 336 (Pa. Cmwlth. 2023) (quoting *City of Johnstown v. Workers' Comp. Appeal Bd. (Sevanick)*, 255 A.3d 214, 220 (Pa. 2021)). Relative to the instant matter, this Court acknowledges that DCHD has a statutory duty to fulfill under the Law, but also recognizes that the General Assembly expressly carved out exceptions to DCHD's jurisdiction, *see* Sections 13 and 14 of the Law, and considered there may be circumstances in which DCHD should "cooperate with the . . . boards of health of municipalities exempt from its jurisdiction in accordance with [S]ection 14 of th[e Law,]" the latter of which the acting DOH Secretary encouraged in her April 19, 2022 letter. Section 10(d) of the Law, 16 P.S. § 12010(d). Consequently, there is no basis for this Court to conclude that Appellees cannot retain responsibility for conducting environmental health inspections and/or licensing of food and beverage

---

[25] The witnesses explained that a need arose during the COVID-19 pandemic; however, that need was not specific to their municipalities.

retail establishments, food stores, public and parochial schools, and public swimming pools, while acceding to DCHD's authority in other areas.

Where, as here, there was no record evidence that Appellees called upon DOH to conduct environmental health inspections and/or licensing of Appellees' food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools in Appellees' stead as of February 28, 2022, the trial court reasonably interpreted that the General Assembly intended in Sections 13 and 14 of the Law to exempt Appellees from DCHD's jurisdiction for those specific activities. Therefore, despite that Appellants must conduct their statutorily mandated duties, they are not called upon to do so for exempt activities within exempt municipalities' boundaries and, thus, the trial court properly concluded that Appellees have a clear right to relief and Appellants do not. Because Appellants did not satisfy this first permanent injunction requirement, the trial court did not err by concluding that Appellants were not entitled to a permanent injunction.

2. Relief is Necessary to Avoid Injury that Cannot be Compensated by Damages

In the instant matter, the trial court found that the various complaint allegations, DCHD's witness testimony, and DCHD's log of licensees who refused inspections underscored the difficulties caused by two different health departments attempting to enforce local health laws. *See* R.R. at 42a, 65a-66a, 454a, 575a, 816a; *see also* Trial Ct. Rule 1925(a) Op. at 16-18. The fact that Appellants *and* Appellees sought injunctive relief on those bases reflects their basic agreement that there is confusion and conflict among Appellees' citizens and business owners regarding which health department governed their operations, and they had to expend time and effort trying to determine with which regulations they have to comply. While mere confusion may not be an injury in need of avoidance, certainly duplicated government efforts and turmoil at taxpayers' expense represents such injury. The

16

parties also agree that any purported injuries cannot be compensated by damages. *See* Appellants' Br. at 29 ("Admittedly, no monetary damages will address injuries alleged by Appellees[.]").

Accordingly, the trial court did not err by concluding that permanent injunctive relief was necessary to avoid injury that could not be compensated by damages.

3.  <u>Greater Injury Will Result From Refusing Rather than Granting the Relief</u>

The trial court concluded that greater injury would result from refusing permanent injunctive relief because

> to permit local health officers and [] DCHD to operate independently in the affected communities would cause untenable confusion, impermissibly strain resources, and needlessly duplicate efforts. Until such time as these municipal parties voluntarily consent or enact an ordinance choosing to do so, they may not be compelled to submit to the authority of [] DCHD.

Trial Ct. Rule 1925(a) Op. at 19.

This Court finds no error in the trial court's reasoning and agrees that the injunction reduces confusion and conflict because citizens and business owners know which regulations they must follow and to which government entity they must answer. This Court also observes that by granting the permanent injunction, all parties would be in compliance with the Law - Appellants would carry out their statutory public health responsibilities in non-exempt municipalities or for non-exempt activities in exempt municipalities, and Appellees would remain free to conduct environmental health inspections and/or licensing of food and beverage retail establishments, food stores, public and parochial schools, and public swimming pools as they historically have done. Accordingly, this Court holds that

17

the trial court did not err by concluding that greater injury would result from refusing rather than granting the permanent injunction.

For the above reasons, the trial court properly concluded that Appellees satisfied the permanent injunction criteria and Appellants did not.

**Conclusion**

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thornbury Township and
Middletown Township

v.

County of Delaware and
Delaware County Health Department

County of Delaware and
Delaware County Health Department

v.

Clifton Heights Borough,
Eddystone Borough, Prospect
Park Borough, Ridley Park Borough,
Lower Chichester Township, and
Thornbury Township

County of Delaware and
Delaware County Health Department

v.

Clifton Heights Borough,
Eddystone Borough, Prospect
Park Borough, Ridley Park Borough,
Lower Chichester Township, and
Thornbury Township

Clifton Heights Borough and
Eddystone Borough

v.

County of Delaware and Delaware
County Health Department

**CASES CONSOLIDATED**

No. 330 C.D. 2024
Trial Court No.: CV-2022-009816

No. 603 C.D. 2024
Trial Court No.: CV-2023-001002

No. 618 C.D. 2024
Trial Court No.: CV-2023-000375

No. 619 C.D. 2024
Trial Court No.: CV-2023-000380

Appeal of: County of Delaware and : 
Delaware County Health Department :

# O R D E R

AND NOW, this 6th day of May, 2025, the Delaware County Common Pleas Court's February 28, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge