J-S28008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ELIJAH GRIGGS | : | |
| | : | |
| Appellant | : | No. 1819 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 15, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003763-2023

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.: **FILED: NOVEMBER 24, 2025**

Elijah Griggs appeals from the judgment of sentence of six to twenty-three months of incarceration and $9,685.08 in restitution. We affirm.

We glean the following background information from the certified record. Appellant, who drove a dark-colored Chrysler 300, was employed at Diva Logistics in York, Pennsylvania, as a truck driver with a route that took him to Netcong, New Jersey, every weekday evening. The company's transportation manager, Michael Ward, repeatedly addressed Appellant's tardiness with him. In late January 2023, Appellant gave notice of his intent to resign at the end of the following week.

On February 3, 2023, Appellant was scheduled to depart the facility at 5:15 p.m. Mr. Ward arrived at the workplace at approximately 4:00 p.m., leaving his personal Mitsubishi Outlander in the company's front parking lot. His vehicle had no damage to its quarter panel or windshield when he left it

there. Within half an hour thereafter, Mr. Ward had completed his inspection of the fleet of trucks located in the property's other parking lot. None had any cracked or shattered windows or other damage.

When Appellant failed to timely appear for his shift, Mr. Ward sent another driver on Appellant's route. Appellant telephoned Mr. Ward at roughly 5:45 p.m. to inquire where his truck was. Mr. Ward informed Appellant of what had transpired and that he was accepting the resignation early. Appellant became agitated and expressed displeasure that Mr. Ward had not informed him of this turn of events earlier. At around 6:15 p.m., Appellant appeared in Mr. Ward's office to berate him in person, and left the building within ten minutes. Mr. Ward went outside at approximately 10:45 p.m. to discover that his personal vehicle and three of the company-owned trucks in the lot had been damaged. Specifically, windows of the trucks had been chipped, cracked, or shattered, while Mr. Ward's Outlander sustained damage to its windows and body.

Mr. Ward called the police, and Officers Brett Green and Alexis Haggerty of the Northern York Regional Police were dispatched to Diva Logistics just before midnight. They spoke with Mr. Ward and photographed the affected vehicles, concluding that the damage was consistent with being stuck by projectiles such as BBs, pellets, or marbles. All told, the cost to repair the damage to the vehicles was just under $9,700.

Mr. Ward also provided the officers with surveillance footage of the parking lots. The video depicted what Mr. Ward identified as Appellant's

Chrysler 300 arrive in the lot at 5:44 p.m. on the day in question. The car remained in place for twenty minutes, until it pulled up in front of one of the trucks that Mr. Ward found to be damaged, which was one Appellant used to drive for the company. At that point, another employee arrived in the lot and, after he had entered the building, Appellant's vehicle backed out and stopped in front of another truck Appellant used to drive, which also was among the damaged vehicles. The Chrysler then pulled in between two trucks, one of which was the third to sustain damage. At 6:11 p.m., Appellant's car left the lot and was recorded by a second camera a minute later entering the company's front lot where Mr. Ward's personal vehicle was parked. Appellant debarked from the car more than twenty minutes later and went in the front door of the business. Appellant exited the building at 6:39, returned to his car, and left the lot at 6:41.

During the course of the ensuing investigation, the officers contacted Appellant by telephone. He admitted to being in the parking lots on the night in question, and explained his movements that were captured by the surveillance cameras as a deliberate attempt to show the company's human resources department, with whom he was speaking on the phone at the time, that he was at the worksite. Appellant admitted to the officers that he had been upset because he made a long drive to work only to be told to leave.

Based upon this evidence, the Commonwealth charged Appellant with criminal mischief, graded as a felony of the third degree. He proceeded to a jury trial wherein Mr. Ward and Officer Green testified to the above facts. The

jury also viewed the surveillance footage, during which Officer Green highlighted the appearance therein of the passenger window of Appellant's car being rolled down on that cold February night when it stopped near the affected vehicles, at angles consistent with the use of a BB or pellet gun, and the visible changes to the windows of the trucks occurred while Appellant remained in place.[1]

Following the close of evidence, the trial court charged the jury as to the elements of criminal mischief. It instructed them that, to find Appellant guilty, it must be convinced beyond a reasonable doubt that he "intentionally damaged real or personal property of another." N.T. Trial, 7/30-31/24, at 203. If and only if the jury so found, it then had to "determine beyond a reasonable doubt the following additional element: was the value in excess of $5,000?" *Id*. On the verdict slip, the jury indicated that it found Appellant guilty, and circled "yes" next to the question: "Do you find that the defendant caused pecuniary loss in excess of $5,000?" Verdict, 7/31/24 (comma added).

After ordering a pre-sentence investigation, the trial court imposed the aforementioned sentence. Appellant promptly filed post-sentence motions, which were denied without a hearing. This timely appeal followed. Both Appellant and the trial court complied with their respective obligations pursuant to Pa.R.A.P. 1925. Appellant raises two issues for our review:

---

[1] The police did not recover evidence of the weapon or projectiles that had caused the damage.

[1.]   Where the jury found that [Appellant] caused pecuniary loss of more than $5,000—but not that he **intended** to cause pecuniary loss of more than $5,000—does grading his criminal mischief conviction as a third-degree felony constitute an illegal sentence under ***Apprendi v. New Jersey***[, 530 U.S. 466 (2000),] and ***Alleyne v. United Sates***[, 570 U.S. 99 (2013)]?

[2.]   Did the [trial] court impose an illegal sentence in grading [Appellant]'s criminal mischief offense as a third-degree felony where, even assuming there was evidence that [Appellant] intended to cause damage, there was no evidence that he specifically intended to cause pecuniary loss in an amount exceeding $5,000?

Appellant's brief at 4 (cleaned up, emphasis in original).

Appellant's issues implicate the legality of his sentence.[2]  ***See***, ***e.g.***, ***Commonwealth v. Seladones***, 305 A.3d 83, 85 (Pa.Super. 2023) ("[A] claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence." (cleaned up)).  He thus presents questions of law subject to *de novo*, plenary review.  ***Id***.  In particular, when faced with contentions that the sentence imposed exceeded that allowable by law, an appellate court must "review the verdict slip and instructions as a whole to establish the level of culpability the jury found beyond a reasonable doubt separate and apart from the challenged facet of the jury instructions.  We then

---

[2] To the extent that Appellant's challenges were raised for the first time on appeal, waiver pursuant to Pa.R.A.P. 302(a) and Pa.R.A.P. 1925(b) do not apply.  ***See***, ***e.g.***, ***Commonwealth v. Warunek***, 279 A.3d 52, 54 (Pa.Super. 2022) ("A challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte*." (cleaned up)).

ascertain the maximum sentence that would have been imposable at that level of culpability." ***Commonwealth v. Dixon***, 255 A.3d 1258, 1266 (Pa. 2021).

The criminal mischief statute states, pertinent to our discussion, as follows:

> **(a) Offense defined.--**A person is guilty of criminal mischief if he:
>
> (1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in [§] 3302(a) of this title (relating to causing or risking catastrophe);
>
> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;
>
> (3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat;
>
> (4) intentionally defaces or otherwise damages tangible public property or tangible property of another with graffiti by use of any aerosol spray-paint can, broad-tipped indelible marker or similar marking device;
>
> (5) intentionally damages real or personal property of another; or
>
> (6) intentionally defaces personal, private or public property by discharging a paintball gun or paintball marker at that property.
>
> **(b) Grading.--**Criminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss in excess of $5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally causes pecuniary loss in excess of $1,000, or a misdemeanor of the third degree if he intentionally or recklessly causes pecuniary loss in excess of $500 or causes a loss

- 6 -

in excess of $150 for a violation of subsection (a)(4). Otherwise criminal mischief is a summary offense.

18 Pa.C.S. § 3304.

With exceptions not relevant here, the maximum sentence for a third-degree felony is seven years. *See* 18 Pa.C.S. § 1103(3). For misdemeanors of the second and third degrees, the maximums are two years and one year, respectively. *See* 18 Pa.C.S. § 1104(2)-(3). Meanwhile, a person convicted of a summary offense may not be sentenced to more than ninety days in prison. *See* 18 Pa.C.S. § 1105.

In the case *sub judice*, Appellant was charged with and convicted for violating subsection (a)(5) of the criminal mischief statute. The trial court concluded that the jury's findings that Appellant was guilty and that he caused pecuniary loss in excess of $5,000 rendered his offense a third-degree felony. Accordingly, it deemed it within its authority to sentence him to six to twenty-three months of confinement and to pay restitution to Mr. Ward and Diva Logistics.

Appellant does not challenge the Commonwealth's proof that the victims sustained pecuniary losses of $4,806.55 and $4,878.53, respectively. Rather, Appellant questions whether the absence of a factual finding by the jury that he not only intended to damage the victims' property, but that he specifically intended to cause losses totaling more than $5,000, renders his sentence illegal.

Appellant presents two distinct bases for a finding of illegality. The first flows from *Apprendi* and its progeny, which mandate that any fact that increases a defendant's sentencing exposure is an element of the offense that must be determined by the fact-finder beyond a reasonable doubt. *See* Appellant's brief at 12-13. His second argument speaks not to whether the sentence-enhancing fact was found by the jury, but whether the Commonwealth's evidence was sufficient to support the finding. In this vein, Appellant asserts that, while "the Commonwealth presented evidence that he intentionally damaged vehicles owned by his former employer and supervisor[,]" and to show how much pecuniary loss resulted, it proffered "no evidence, however, as to the amount of loss [he] **intended** to inflict—let alone that such amount exceeded $5,000." Appellant's brief at 27.

The foundation of each of Appellant's theories is his construction of § 3304(b) as requiring proof that he specifically intended his victims to sustain losses of more than $5,000 before his § 3304(a)(5) conviction may be graded as a third-degree felony. This is a matter of statutory interpretation to which the following principles apply.

Our legislature has established that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). It is axiomatic that "[t]he plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in

context and give words and phrases their common and approved usage." **Commonwealth v. Chesapeake Energy Corp.**, 247 A.3d 934, 942 (Pa. 2021). The provisions of the Crimes Code must "be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in [Title 18] and the special purposes of the particular provision involved." 18 Pa.C.S. § 105. We presume that the legislature did not intend a result that is absurd, unreasonable, or impossible of execution. **See** 1 Pa.C.S. § 1922(1).

This Court must "interpret statutory language not in isolation, but with reference to the context in which it appears." **Commonwealth v. Kingston**, 143 A.3d 917, 922 (Pa. 2016). "[E]very portion of statutory language is to be read together and in conjunction with the remaining statutory language, and construed with reference to the entire statute as a whole." **Commonwealth v. Glenn**, 233 A.3d 842, 845 (Pa.Super. 2020) (cleaned up).

Where the words are clear, we interpret the statute in accordance with its plain meaning without looking further than its text. **See**, **e.g.**, **Commonwealth v. Strunk**, 325 A.3d 530, 534 (Pa. 2024). It is only when a provision, read in context, is susceptible to at least two reasonable interpretations, or "raises non-trivial interpretive difficulties on its face," that we deem the language to be ambiguous. **See Commonwealth v. Hardy**, 337 A.3d 385, 409 n.113 (Pa. 2025) (cleaned up).

Finally, while statutes are generally to be liberally construed, penal provisions are strictly construed. **See** 1 Pa.C.S. § 1928(b)(1), (c). However, this rule of lenity does not require us to "give the words of a statute their narrowest possible meaning, nor does it override the general principle that the words of a statute must be construed according to their common and approved usage." **Commonwealth v. Lehman**, 311 A.3d 1034, 1048 n.20 (Pa. 2024) (cleaned up).

Mindful of these principles, we consider the interpretations suggested by the parties. Appellant posits that when our legislature declared that a conviction for criminal mischief may only be graded as a third-degree felony if "the actor intentionally causes pecuniary loss in excess of $5,000," it unambiguously called for proof that the accused had a goal of inflicting at least $5,000 of property damage when he engaged in his mischief. **See** Appellant's brief at 16. He reasons as follows:

> A plain reading of the grading provision here shows it centers on the amount of loss intended and not the amount of loss caused. Indeed, for enhanced grading, the statute says quite simply that a defendant must intentionally cause a certain amount of loss—not just intentionally cause **some** loss. The former implicates grading while the latter is more germane to conviction. Applying the language of the statute as written and giving effect to its natural meaning, only setting out to cause more than $5,000 in pecuniary loss authorizes enhanced grading.
>
> If the General Assembly had intended to base third-degree-felony grading solely on the dollar value of the loss, it could easily have done so by eliding the word "intentionally" from the clause stating the requirements for such grading. In fact, the General Assembly has accomplished as much in grading several other offenses. **See**, **e.g.**, 18 Pa.C.S. § 3903(a)(5), (a.2)(2), (b) (grading numerous

forms of theft strictly on the basis of the amount of money taken); 18 Pa.C.S. § 4105(c)(1) (grading five forms of bad checks based solely on the dollar amount of the check passed).

The inclusion of such language, where the General Assembly opted to exclude it from the grading provisions of other criminal statutes, represents a choice that should be given effect. The plain language of the statute therefore requires proof that a defendant intended to cause more than $5,000 of pecuniary loss in order to grade criminal mischief as a third-degree felony. It is not enough that more than $5,000 in loss was caused.

*Id*. at 16-18 (footnote and some citations omitted, emphasis in original).

The Commonwealth disagrees with Appellant's interpretation, but nonetheless contends that the statute is unambiguous. It advocates that "[t]he only reasonable construction of [§] 3304 is that the defendant's intent applies to the act of causing damage, while the resulting monetary loss determines the grade of the offense." Commonwealth's brief at 22. The Commonwealth argues that Appellant's construal is unreasonable in that it "would create an impossible burden of proof for the Commonwealth and render the felony grading provision a nullity[.]" *Id*. It expounds:

[Appellant's] interpretation requires the Commonwealth to prove, beyond a reasonable doubt, that a defendant possessed the conscious objective not just to cause damage, but to cause damage exceeding a specific dollar amount. This creates an absurd and nearly impossible evidentiary burden. The Commonwealth would have to prove the defendant's state of mind as to the monetary value of the destruction he was about to cause. Short of a defendant announcing his financial intentions on video or leaving a detailed note, it is difficult to imagine what evidence could ever satisfy this burden. For example, if a defendant intentionally steals copper pipes from air conditioners at a commercial facility to sell for $2,000 of scrap metal, and the cost of replacement of the air conditioners is $600,000, the defendant can, at most, be sentenced for a third[-]degree misdemeanor according to [Appellant]. Under

- 11 -

[his] reading, unless the Commonwealth could prove he knew the replacement cost of the air conditioners and specifically intended to exceed the $5,000 threshold, a felony conviction would be impossible.

*Id*. at 22-23 (citation omitted).

The Commonwealth insists that the reference to the intentional state of mind in the grading portion of § 3304 was included not to require proof that the defendant acted with the goal of inflicting a certain measure of loss, but as a function of the fact that different *mens reae* can support a criminal mischief conviction. It contends that our legislature's chosen language indicates an intent to qualify only the most culpable for felony grading:

The base offense of criminal mischief can be committed with several different states of mind. For example, some forms of mischief can be committed "intentionally or recklessly." 18 Pa.C.S. § 3304(a)(2), (3). Others, including the type [Appellant] committed, require that the defendant act "intentionally." *Id*. at § 3304(a)(5). This deliberate legislative choice directly impacts the grading scheme in subsection (b). The third-degree[-]misdemeanor grade, for instance, can be triggered by conduct that is either intentional or reckless. In contrast, the higher grades of a second-degree misdemeanor and a third-degree felony can only be triggered if the actor "intentionally causes" the requisite pecuniary loss. The legislature clearly intended a combination of the actor's *mens rea* and the amount of loss **actually caused** to govern the seriousness of the offense.

*Id*. at 24 (some citations omitted, emphasis in original).

Upon careful consideration of the statutory language, we agree with the Commonwealth's reading, which we perceive to reflect the whole of § 3304's plain language in context, and find this interpretation reinforced, rather than

- 12 -

contradicted, by Appellant's references to the grading provisions of other penal statutes.

In arguing that the reference to intent in § 3304(b) implicates the desire to achieve a certain level of damage and not the thought behind the criminal act, Appellant first referenced § 3903, which supplies the following value-specific grading provisos for all theft offenses:

> **(a) Felony of the second degree**.--Theft constitutes a felony of the second degree if:
>
> . . . .
>
> (5) The amount involved is $100,000 or more but less than $500,000.
>
> **(a.1) Felony of the third degree**.--Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.
>
> **(a.2) Felony of the first degree**.--Except as provided in subsections (a) and (a.1), theft constitutes a felony of the first degree if:
>
> . . . .
>
> (2) the amount involved is $500,000 or more.
>
> **(b) Other grades**.--Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
>
> (1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or

(2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

18 Pa.C.S. § 3903.

What Appellant fails to appreciate is that each of the theft offenses to which this grading statute applies requires proof of intentional acts. *See* 18 Pa.C.S. §§ 3921 (theft by unlawful taking), 3922 (theft by deception), 3923 (theft by extortion), 3924 (theft of lost property), 3925 (receiving stolen property), 3927 (theft by failure to make required disposition of funds received). Similarly, the statute he cites establishing various grades for the offense of passing bad checks based solely upon the amount of the instrument, does not involve more than one level of criminal culpability in defining the crime. *See* 18 Pa.C.S. § 4105. In these instances, there is simply no need for the grading provisions to mention levels of culpability because the offense is only committed upon proof of one particular mental state.

Unlike the theft and forgery offenses cited by Appellant, the multiple definitions of the crime of criminal mischief stated in § 3304(a) incorporate widely-varying degrees of criminal culpability, spanning the full gamut of states of mind from intentional down to criminal negligence, the least culpable *mens rea* that can support criminal punishment. Were the loss-based gradings listed in § 3304(b) in the same manner as they are in the above-discussed statutes cited by Appellant, a person would be punishable to the same extent for causing more than $5,000 in damages to his neighbor's car through the

negligent use of fireworks as he would for intentionally setting fire to the vehicle. Further, under Appellant's reading of § 3304(b), two individuals who, by committing the indistinguishable acts, intentionally damaged identical cars, each causing losses in excess of $5,000, would nevertheless face wildly disparate punishment based upon whether they had an established history of knowing the prices of cars and car repairs.

Overall, we deem Appellant's construction of the criminal mischief statute to be unreasonable, when viewed in the context of the Crimes Code as a whole, and one that is not required by the plain meaning of the language employed by the General Assembly. We simply do not discern from the language of § 3304 the legislative intent to make ignorance or lack of life experience a sentencing boon in that people who commit the identical acts are subject to different punishments, not because of any difference in what they did, but because of what they knew about how much things cost.

Instead, we perceive the plain language of § 3304(b) to reflect a legislative intent to: (1) reserve the third-degree-felony and second-degree-misdemeanor gradings for individuals who intentionally cause damage, with the differentiation between the two being the pecuniary value of that damage; (2) provide the lesser third-degree-misdemeanor grading for intentional or reckless acts causing a smaller amount of loss; and (3) establish that criminal mischief achieved through mere negligence or resulting in minimal damage shall be a summary offense.

Consequently, the Commonwealth was not required to prove, and the jury was not required to find, that Appellant damaged the company trucks and Mr. Ward's personal vehicle with the intent to cause more than $5,000 in losses. The burden necessary to sustain Appellant's § 3304(a)(5) conviction, graded as a third-degree felony, was proof beyond a reasonable doubt that he intentionally damaged that property and that his intentional acts resulted in losses exceeding $5,000. The Commonwealth offered evidence to sustain each of those elements, and the jury found that it proved them all. *Cf. Commonwealth v. Kearney*, 225 A.3d 590, 596 (Pa.Super. 2019) (vacating sentence for criminal mischief graded as a third-degree misdemeanor because the Commonwealth offered no evidence that the damage the defendant caused to a windshield amounted to a loss of at least $500).

Since Appellant's sentence is well within the lawful maximum, we have no cause to disturb it.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/24/2025

- 16 -